IN THE UNITED STATES DISTRICT COURT FOR THE
*EASTERN* ~~NORTHERN~~ DISTRICT OF TEXAS
BEAUMONT, TEXAS

*Madelyn Marina Quiroz*
*Marina Naomi Hernandez Quiroz*

*V*

*City of Dayton, TX*
*Former Chief Robert Vine*
*Former Captain John Coleman*
*Former Lieutenant Terri Hughs*

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

JUL 17 2023

BY
DEPUTY_____

## PLAINTIFF'S ORIGINAL COMPLAINT

## TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, Madelyn Marina Quiroz, individually and Marina Naomi Hernandez Quiroz, Madelyn's mother ("Plaintiffs') and files this Plaintiff's Original Complaint against the above-entitled  Defendants ("Defendants") acting under color of law, Captain John D. Coleman, Lieutenant Burleigh, Sergeant Kristein Seibert, John Christopher Duos, Donald McDaniel , and respectfully shows as follows:

I.

II.

## PARTIES

2.      **<u>Plaintiff, Madelyn Marina Quiroz i</u>**s an individual resident of Liberty County, Texas who was sixteen years old on the date of the accident in question on January 23, 2020. Maydelyn became 18 years of age on July 18, 2021. The statute of limitation began to run on July 18, 2021. This suit is timely filed within two years of Madelyn reaching the age of majority.

3.      **<u>Plaintiff, Marina Naomi Hernandez Quiroz</u>** is an individual resident of Liberty County, Texas.

4.    **Defendant, Eduardo Hernandez** is an individual resident of and may be served with summons at    545 County Road, Dayton, TX 77535 or wherever found. acting under color of law

5. **City of Dayton,**   through its City Secretary,   may be served at City Hall in Dayton Texas or wherever she may be found  and he was acting under color of law

6.**City Manager/Theo Melancon** 117 Cook Street, Dayton, TX 77535 and he was acting under color of law

**70.Dickenson City Manager-** City Hall @ Farm to Market

Road 517, Dickenson, TX 77539 and he was acting under color of law

**City Manager/Theo Melancon** 117 Cook Street, Dayton, TX 77535 and he was acting under color of law

**Chief Robert Vine-** 150 1st St SE, Paris, TX 75460 or wherever found

Chief Vine while acting under color of law failed to supervise and allowing his staff to violate their own policy and procedures and allowing a faulty investigation to continue. Mr. Vine then took the case into his own possession, stopping the clock jeopardizing the statutes of limitation. He allowed all body cam footage

to be deleted.

**Dayton Police Captain** John D. Coleman-1923 Sam Houston Street, Liberty, TX 77575 and he was acting under color of law

**Dayton Police Captain Coleman** arrived at the scene immediately when dispatched announced that Morgan White was involved in the accident. He denied

Marina Quiroz an accident reconstruction investigation. He stated they

did not have the resources. However, the police department had two on

their payroll. Marina Quiroz requested he contact DPS and he stated, he

would not bother them with this. Captain Coleman allowed an unknown

white male enter the active crime scene and remove items from the

floorboard of Morgan White's driver side.

**CID LT. Terri Hughes-**117 Cook Street, Dayton, TX 77535 and he was acting

under color of law

## III.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this case pursuant to 28 U.S.C

Section 1331 as this is a Civil Rights action brought pursuant to 42

U.S.C 1983.

## IV.

## FACTUAL BACKGROUND

1.     This is a Civil Rights action brought pursuant to 42 U.S.C.

Section 1983 and 1981 for her internal and external injuries by

denying, delaying, refusing timely medical care for serious injuries of Madelyn Marina Quiroz causing her to become paralyzed and damages conducted in the state actors violation of Madelyn's Civil Rights under.

2.    The denial and one and half hour delay in providing medical care was due to an argument by Steve Smith, paramedic and the Fire Chief, Murphy Green, acting under color of law, over whether to call Life Flight to a hospital.

3.   No assessment of Madelyn's medical condition, by the paramedic, Steve Smith was done at the scene.

4.   As a result of the lack of an assessment, the denial of reasonable medical care an hour and a half after the collision, Plaintiff sustained serious injuries and today is unable to walk.

3.    On or about January 23, 2020- At 2:45 p.m. Two vehicles were racing at a high rate of speed on Waco St. in Dayton.

4. The driver of the first vehicle, Morgan White, lost control and crashed causing serious bodily injury to  the back seat passenger in the car, Madelyn Quiroz.

5.  The driver of the second vehicle stopped at the scene and later admitted he, too, was traveling at a high rate of speed.

6.   City of Dayton first responders arrived shortly after the crash, including Dayton Police command staff.

 7.   Due to the serious nature of Madelyn's injuries, she was life flighted to Memorial Hermann Hospital, after a hour and fifteens, long delay by the first responders on the scene to transport her to the hospital.

8.   Madelyn sustained a broken back, a serious spinal cord injury, five broken ribs, a partial collapsed lung, face trauma, fractured nose, abdominal distention, bleeding spleen, three breaks in the left arm with a damaged radial nerve.

9. Due to these catastrophic injuries, Madelyn is now a paraplegic and confined to a wheelchair.

10. The Dayton Police Officers, Captain John D. Coleman, Lieutenant Burleigh, Sergeant Kristein Seibert, Officer John Christopher Duos, Officer Donald McDaniel officers  acting under color of law were deliberately indifferent to the  serious medical needs of Madelyn as a victim of the crime of vehicular assault.

11. Rather, than tend to the medical needs of the more seriously injured, Madelyn,  the officers triaged Morgan Skye White and provided her immediate medical care.

12. Morgan Skye White suffered less serious injuries in the accident.

13. The Dayton Officers failed to follow several of their own internal policies regarding the investigation of major traffic collisions.

14. On January 31, 2020, the Vehicle Crash Data Event Recorder was pulled, and the data revealed that Morgan was traveling at 96 mph on a 30 mph roadway, at time of impact.

15.   Mrs. Marina Quiroz, the mother of Madelyn and a former Sheriff's Deputy in Harris County and a former advance accident investigator,  contacted Dayton Police Captain John Coleman, who was acting  under of color of law was at the scene of the crash, and requested an Accident Reconstructionist investigate the crash. Captain John Coleman refused.

16.  Mrs. Marina Quiroz  on June 2,  2021 requested to see the body camera video, the dash camera video, photographs of the scene, photograph of the vehicles, videos of the intersection, data event documents, 911 call logs and any other documents related to the accident.

17.   Captain Coleman refused, again violating Dayton Police policy.

18.    Mrs. Quiroz contacted Dayton Police Chief Robert Vine while he was acting under color of law and requested the Harris County Sheriff's Department to assist with an Accident Reconstruction.

19.    Dayton Police Chief Robert Vine failed to request assistance from Harris County Sheriff's Department.

20.    Mrs. Quiroz filed a Freedom of Information request with the City of Dayton, for documentation and recordings related to the crash.  The Attorney General's office stated these records could be withheld if there is an active investigation.

21.    Mrs. Quiroz communicated with the Dayton Police Dispatcher Sgt. Ray who stated case was not being investigated because it was just an accident!

On July 30, 2020 @ approximately 10:00am Lieutenant Terri Hughes communicated via email to Liberty County Assistant District Attorney McCarty that the mother of the injured is a law

enforcement officer in Harris County and is not happy with the fact we believe this to be a motor vehicle ACCIDENT caused by failure to control speed (more than likely).

22. However, the case records would not be released because the City of Dayton legal department claimed the police were conducting an active investigation.

23. By October of 2021, no witnesses, including Madelyn, were contacted, or interviewed by Dayton PD investigators.

24. Lacking any formal investigation by the Dayton Police Department, Mrs. Quiroz conducted her own investigation and notified City of Dayton officials about the faulty investigation conducted by Dayton Police Department.

25. Due to the lack of investigation by Dayton Police Department, Mrs. Quiroz hired Wayne Dolcefino Consulting to investigate the

wrongdoing by Dayton PD personnel.  The City of Dayton finally stated that the body camera recording of all police personnel that were involved in the crash investigation had been deleted.

26.   On Nov 2021. Wayne Dolcefino held a press conference in front of the Dayton Police Department and demanded City of Dayton officials hire an outside Independent Investigator.

27. However, by this time, The City Manager, Captain Coleman and Chief Vine resigned.

28.  The outside investigator Jesse Prado's findings were significant, noting the rampant neglect and deliberate indifference  on the part of the Dayton Police  officers. As a result:

Dayton Police Department Chief Robert Vine was found in violation of Failure to Supervise.

 Dayton's Lt. Hughes was terminated for Dereliction of Duty.

Dayton Police Department Sergeant Kristen Seibert was found to be in violation for failure to inventory the vehicle.

29.  In January of 2022, two years after the crash, Dayton Detective Dale conducted an investigation, and a felony warrant was issued for Morgan White.

30.  Because Morgan was a juvenile at the time of the crash, the case was assigned to the Liberty County Attorney's office. When Morgan turned eighteen, she left the jurisdiction of the County Attorney's office, and there is nothing they can do with the case unless some new evidence is presented prior to Morgan's eighteenth birthday.

31. Mr. Poston admitted that he and his office failed to meet their legal due diligence, leaving Madelyn with few options for justice.

32. Furthermore, he has evidence that was unknown prior to Morgan's eighteenth birthday, and was submitted after she turned

eighteen, but has made it very clear that he will not submit or release this new evidence.

## V.

## CAUSES OF ACTION

. Plaintiff incorporates herein the facts as set forth herein. All prerequisites for filing suit have been satisfied that Defendants owed  a duty to provide her  adequate medical care.

1.       After Madelyn was injured from the collision, she was bleeding from her face, crying, moaning, groaning from pain, and in obvious and critical need of emergency medical care and treatment. The ignoring and denying of medical care pose an objective and subjective substantial risk of harm to Madelyn.

2.        However, rather than treating her  immediately, calling for life flight, medical personnel or EMS, or transporting her to a hospital to treat his injuries that resulted from the trauma from the  excessive speed and vehicle collision the defendant's. While acting under the color of law, intentionally failed as officers stood by and allowed the officer to engage in the lack of treatment..

3.       The officer did not provide life-saving measures, timely summon medical care, or permit medical personnel to treat Madelyn Quiroz.

4.      The denial and delay of medical care to Madelyn Quiroz caused Madelyn Quiroz extreme physical and emotional pain and suffering and was a contributing cause of Madelyn Quiroz severe injuries.

5.    The denial of medical care by the officers and prisoners deprived Madelyn Quiroz of the right to be secure in his person against unreasonable searches and seizures guaranteed to Madelyn Quiroz under the Fourth Amendment to the United States Constitution and as applied to state actors by the Fourteenth Amendment.

6.    Madelyn Quiroz was frightened, suffered conscious pain and suffering, great physical pain and emotional distress up to the time of the vehicle collision, and also suffered the loss of enjoyment of life, loss of life, and loss of earning capacity.

7.    The Unknown officers knew that failure to provide timely medical treatment to Madelyn Quiroz could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing Madelyn Quiroz's great bodily harm..

8.    The conduct of the officer and defendants was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Madelyn Quiroz and therefore warrants the imposition of exemplary and punitive damages as to the officer/ prisoner defendants. The defendants failed to render any medical care to Madelyn Quiroz after the vehicular assault.

9.    The misconduct described in this claim was objectively unreasonable and was undertaken intentionally with deliberate indifference or willful indifference to Madelyn Quiroz's constitutional rights.

10.    As a result of their misconduct, the officer and prisoner defendants are liable for Madelyn Quiroz's injuries, either because they were integral participants in the denial of medical care or failed to intervene to prevent these violations.

# VI.

# DAMAGES

7.    As a result of her bodily injuries, which were proximately caused by Defendant's deliberate indifference to the serious medical needs of Plaintiff.

Plaintiff is entitled to reasonable and proper compensation for the following legal damages:

a.        Past and future medical expenses;

b.        past and future physical pain and mental anguish;

c.         past and future physical impairment;

d.         past and future disfigurement; and

e.        past lost wages and future lost wage-earning capacity.

8. Plaintiff seeks actual damages and punitive damages in an amount within the jurisdictional limits of this Court. More specifically, Plaintiff seeks monetary relief of over $1,000,000,000.

1. Plaintiffs and her mother suffered from pecuniary loss as a result of the injuries to  Madelyn and Mariana  and mental anguish as a result of the injuries

2. Medical providers and officers listed above were aware of the foreseeable risk of depriving Madelyn of the required and/or requested medical care. They nonetheless deprived Madelyn , and she was injured due to this deprivation, inadequate medical care, and delay in providing medical care. She essentially was left to die, but survived.

3. The conduct of the medical providers was grossly negligent. Rather than treating Madelyn immediately or calling for life flight, medical personnel or EMS to treat his injuries that resulted from the accident, Defendants prioritized and triage the

less injured person. the Defendants, exacerbated the injuries by denying her medical care..

4.     Plaintiff incorporates herein the facts as set forth herein. Accordingly, all prerequisites for filing suit have been satisfied that Dayton Police officers and EMS engaged in wrongful conduct by denying and delaying medical care .

5.     Defendants, unknown medical providers and officers trained and supervised by Dayton Police and Fire acting under color of law  when over an  hour deprived Madelyn of medical care,, causing her injuries and damages. Additionally, the officers acted with deliberate indifference to the rights of Madelyn. Because of Defendants, unknown and the above identified  EMs, and officers' action of  denying her life flight, it violated  Madelyns's constitutional rights, including but not limited to those under the Fourth, Eighth and Fourteenth Amendments of the United States Constitution.

6.     The misconduct described in this claim denying her medical   was objectively unreasonable and undertaken with willfulness and reckless indifference to the rights of Madelyn.

**Count Nine-Medical Negligence – Chapter 74 Texas Healthcare Liability Act.**

7.    Plaintiff incorporates herein the facts as set forth herein. Accordingly, all perquisites for filing suit have been satisfied that Defendant medical providers, EMS owed  Madelyn  a duty to provide her adequate medical care.

8.    Defendant Medical Providers, breached their duty of care and deviated from the standard of care for healthcare medical EMS,  police and medical providers by:

9.    failing to assess MADELYN MARINA QUIROZ's complaints of dizziness, pain, and visible  injuries;

10.   failing to allow her to be immediately transported to the hospital prior to  or immediately after the accident;

11.   failing to  provide adequate medical care;

12.   failing to transport MADELYN  MARINA QUIROZ to a hospital after becoming aware that MADELYN  MARINA QUIROZ was suffering from serious medical needs;

13.  Finally, they breached their duty to medically monitor MADELYN  MARINA QUIROZ when she was involved in the accident .

14.  As a result, this breach of care. Denial of medical care, delay in medical care, and refusal to life flight, transport to a hospital was a proximate cause of MADELYN  MARINA QUIROZ's pain and suffering, and ultimately her injuries;

15.  Defendants failed to recommend that MADELYN  MARINA QUIROZ be transported to a hospital once he learned MADELYN MARINA QUIROZ condition and was having pain that could not be addressed immediately.    MADELYN    MARINA  QUIROZ suffered damages.

## DAMAGES

16.  Plaintiffs request the following relief:

### Punitive Damages

17. Plaintiffs  request  punitive  damages  against  each individually-named defendant. Exemplary damages based on the conduct of refusing to discourage the summoning of emergency services for MADELYN  MARINA QUIROZ and allowing MADELYN MARINA QUIROZ to continue to suffer daily locked in a violent

cell without access to a toilet and an ultimately a humiliating injuries and damages without regard to his serious medical needs, while at the accident scene and under the care of the EMS and police, medical personnel,, emergency medical technicians, that was outrageous, malicious, and morally culpable.

18. MADELYN   MARINA QUIROZ's injuries and damage resulted from the joint and several acts and omissions of Defendants for which Plaintiffs seek punitive and exemplary damages against each individual Defendant (as allowed by law) in an amount appropriate to punish each individual Defendant, and deter others from engaging in similar conduct;

19. Award punitive damages against Defendants in an amount to be shown at trial;

20. These    actions    hereby    entitle    Plaintiffs    to punitive/exemplary damages;

## Actual Damages

21. Compensatory general damages against each Defendant, jointly and severally, in the amount proven at trial.

22.   As wrongful injuries and damages, Plaintiffs seeks actual damages, both general and special, for the loss of their father, MADELYN   MARINA QUIROZ, for the following specific elements of damages:

23.   Pecuniary loss resulting from the injuries and damages of MADELYN   MARINA QUIROZ including, but not limited to, the care, maintenance, relationship, support, services, education, advice, counsel, and reasonable contributions of a pecuniary value, loss of inheritance that the surviving family would have received from MADELYN  MARINA QUIROZ, had he lived.

24.   Termination of the Family Relationship: The positive benefits flowing from the love, support, companionship, and society that MADELYN    MARINA QUIROZ and MADELYN MARINA QUIROZ, would in reasonable probability, have received from MADELYN  MARINA QUIROZ, had he lived.

### Pain and Suffering

25.   Physical pain and suffering sustained by MADELYN MARINA QUIROZ from the time of the incident until his death;

26.   Reasonable and necessary medical expenses, reasonable and necessary funeral and burial expenses.

27.   Reasonable and necessary medical expenses for MADELYN MARINA QUIROZ from the time of the incident until the time of his death; and Reasonable and necessary funeral and burial expenses. Attorney's Fees.

28.   Plaintiffs are entitled to recover attorney's fees and costs under 42 U.S. C. § 1983, 1981 and 1988, including reasonable and necessary attorney's fees incurred by or on behalf of Plaintiffs.

**Mental Anguish**

29.   Mental anguish was suffered by MADELYN   MARINA QUIROZ during the accident. Mental anguish sustained by MADELYN   MARINA QUIROZ from the time of the incident until his death; Mental anguish suffered by MADELYN    MARINA QUIROZ sons after almost two years of not being provided an unredacted autopsy report.

30.   Mental Anguish suffered by His surviving sons and the surviving family as a result of the injuries and damages of MADELYN   MARINA QUIROZ, including, but not limited to, the emotional pain, torment, and suffering that Plaintiff would, in

reasonable probability, experience from the injuries and damages of MADELYN MARINA QUIROZ.

## Physical Impairment

31. Physical Impairment was suffered by MADELYN MARINA QUIROZ while in the accident. Physical Impairment was suffered by MADELYN MARINA QUIROZ from the time of the incident until today.

### 1. Compensatory Special Damages

32. Including, but not limited to compensatory general damages against each Defendant, jointly and severally, in the amount proven at trial.

## Medical expenses, Funeral and Burial Expenses

33. Plaintiffs seek to recover all costs associated with the burial and funeral services for MADELYN MARINA QUIROZ. Reasonable and necessary Reasonable and necessary funeral and burial expenses.

34. Plaintiffs seek reasonable and necessary medical expenses for MADELYN MARINA QUIROZ from the time of the incident until the time of his death; and Reasonable and necessary funeral and burial expenses.

## Attorney's Fees

35.    Plaintiffs are entitled to recover attorney's fees and costs under 42 U.S. C. §1983 and 1988 including reasonable and necessary attorney's fees incurred by or on behalf of Plaintiffs Equitable Relief.

## Compensatory Special Damages

36.    Compensatory general damages against each Defendant, jointly and severally, in the amount proven at trial.

## Additional Damages

37.    Plaintiffs seek to recover all court costs, fees, expenses, and expert fees. Pre and post-judgment interest as permitted by law; and such other relief, including injunctive and/or declaratory relief, as the court may deem proper.

## Equitable relief

38.    Equitable relief, including, without limitation, that Daytona Police be made to apologize and to promulgate, adopt, train, maintain and enforce appropriate policies to prevent future instances of the type of misconduct described herein; Such other relief, including injunctive and declaratory relief, as the court may deem proper.

## PRESERVATION OF EVIDENCE/SPOLIATION NOTICE

39.    Defendants received a letter of preservation requesting and demanding that Defendants preserve and maintain all evidence pertaining to any claim or defense related to the incident made the basis of this lawsuit or the damages resulting therefrom. It warned failure to maintain such items shall constitute a "spoliation" of the evidence.

## TOLLING

40.   Tolling of the statute of limitations is required. Plaintiffs seek to plead any applicable tolling provisions against any defendant that might assert and are required to negate in an effort to a bar claims to suit based on limitations since full information involving MADELYN  MARINA QUIROZ's injuries and damages are being withheld relating to the individuals involved, and additional details. Plaintiffs seek to plead any applicable tolling provisions, including under the discovery rule, against any defendant that might assert a bar to suit based on limitations.

## PRAYER

41.        WHEREFORE, PREMISES CONSIDERED, Plaintiffs, Madelyn Quiroz respectfully pray that Defendants be summoned to appear and answer herein and that upon a final hearing of this cause, that judgment is entered for the Plaintiffs and against Defendants, both jointly and severally, for all damages requested herein, together with prejudgment and post-judgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which Plaintiffs may be entitled at law or in equity. Punish each Defendant, and deter others from engaging in similar conduct;

42.        Plaintiffs assert that the injuries and damages of MADELYN   MARINA QUIROZ was the result of government actors, individually and collectively caused the injuries and damages and harm suffered was the result of Defendants' conduct motivated by evil motive or intent or done recklessly or with callous deliberate indifference to the federally protected rights of MADELYN   MARINA QUIROZ, and hereby entitle Plaintiffs to punitive and exemplary damages.

Equitable relief, including, without limitation, that Defendants be made to apologize and to promulgate, adopt, train, maintain

and enforce appropriate policies to prevent future instances of the type of misconduct described herein; Such other relief, including injunctive and declaratory relief, as the court may deem proper.

## IX.

## JURY DEMAND

11. Plaintiff requests a trial by jury and would show that the appropriate fee is paid contemporaneously with the filing of this Petition.

## X.

## PRAYER

Plaintiff(s) pray that they have judgment against Defendant(s) jointly and severally, for actual damages shown and proved at trial,

## X.

## **PRAYER**

Plaintiff(s) pray that they have judgment against Defendant(s) jointly and severally, for actual damages shown and proved at trial, for prejudgment and post-judgment interest, for costs of court, and for all other relief, legal and equitable, to which they are entitled.

Respectfully submitted,

By: *Madelyn Marina Quiroz*
Madelyn Marina Quiroz

10 Sherwood Street, Dayton, Tx 77535

maddiiquiroz@icloud.com Fax: 1-832-218-4322


By: *Marina Naomi Hernandez Quiroz*
Marina Naomi Hernandez Quiroz

10 Sherwood Street, Dayton, Tx 77535

marinaquiroz@att.net Fax 1-832-218-4322