FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### BEAUMONT DIVISION

OCT 12 2023

BY
DEPUTY_____

| | |
|---|---|
| MARINA NAOMI HERNANDEZ QUIROZ, individually and as attorney in fact for MADELYN MARINA QUIROZ, | §<br>§<br>§<br>§<br>§<br>§ CAUSE NO.: 1:23cv273<br>§ JURY DEMANDED<br>§ |
| **PLAINTIFF(s)** | §<br>§ |
| VS. | §<br>§<br>§ |
| CITY OF DAYTON, TEXAS, CAROLINE WADZECK, THEO MELANCON, ROBERT VINE, JOHN D. COLEMAN, TERRI HUGHES, KRISTEN SEIBERT, CITY OF DAYTON FIRE DEPARTMENT, MURPHY GREEN, LIBERTY COUNTY DISTRICT ATTORNEY JENNIFER BERGMAN HARKNESS, LIBERTY COUNTY ATTORNEY MATTHEW POSTON, MATTHEW SALDANA, CITY OF LIBERTY, TEXAS, KATELYN GRIMES, ALLEGIANCE MOBILE HEALTH MEDICAL SERVICE, STEVE SMITH, RAMJI LAW GROUP, ADAM RAMJI, JAMEY WAYNE BICE a.k.a. JAIME/JAMES & JAMEY BICE, STEPHANIE LEE BLUM BICE, MORGAN SKYE WHITE, EDUARDO HERNANDEZ, NISSAN NORTH AMERICA a.k.a. NISSAN MOTOR CORPORATION, UNION PACIFIC RAILROAD COMPANY. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

-

TO THE HONORABLE JUDGE OF SAID COURT:

Madelyn Marina Quiroz, and Marina Naomi Hernandez Quiroz, individually, and as Attorney in Fact (Madelyn's mother) ("Plaintiffs') and files this Plaintiff's First Amended Complaint against the above-entitled and following Defendants ("Defendants") City of Dayton, Texas, City of Dayton Former Mayor Caroline Wadzeck, City of Dayton Former City Manager Theo Melancon, City of Dayton Deputy Former City Manager/Former Dayton Police Chief Robert Vine, City of Dayton Former Police Captain John D. Coleman, City of Dayton Former Police Criminal Investigation Division Lieutenant Terri Hughes, City of Dayton Police Sergeant Kristen Seibert, City of Dayton Volunteer Fire Department, City of Dayton Volunteer Fire Department Former Chief Murphy Green, Liberty County District Attorney Jennifer Bergman Harkness, Liberty County Attorney Matthew Poston, Liberty County Assistant Attorney/Prosecutor Matthew Saldana and the City of Liberty Fire Department Emergency Medical Service, the City of Liberty Fire Department Emergency Medical Service Paramedic Katelyn Grimes, Allegiance Mobile Health Emergency Medical Service, and Allegiance Mobile Health Medical Service Paramedic Steve Smith, and Ramji Law Group a.k.a. Adam Ramji acting under color of law, Jamey Wayne Bice a.k.a. Jamie/James &

Jamey Bice, Stephanie Lee  Blum Bice, Morgan Skye White, Eduardo Hernandez, Nissan North America a.k.a. Nissan Motor Corporation and Union Pacific Railroad Company in support thereof show as follows:

## I.   PARTIES

1. **Plaintiff,  Madelyn Marina Quiroz,** Hispanic female is an individual resident of Liberty County, Texas who was sixteen (16) years old on the date of the motor vehicle collision incident in question on January 23, 2020. Madelyn became 18 years of age on July 18, 2021. The statute of limitation began to run on July 18, 2021. This suit is timely filed within two years of Madelyn reaching the age of majority.

2. **Plaintiff, Marina Naomi Hernandez Quiroz** Hispanic female, is an individual resident of Liberty County, Texas.

3. **Defendant,  City of Dayton** is a municipality located in Texas.  Through its City Secretary,  may be served with summons at City Hall, 117 Cook Street, Dayton Texas 77535 or wherever she may be found and she was acting under color of law

4. The City of Dayton was untruthful to the Attorney General, Ken Paxton's office and to Mrs. Quiroz.   The City of Dayton was in possession of the body camera footage when requesting the Attorney General's opinion.  They Failed the public and victim, Madelyn Quiroz, a minor.

5. The City of Dayton denied the proper hold of the wrecked 2014 Nissan Maxima for Investigational purposes and for defective product liability.

6. The City of Dayton Police Department failed to conduct a complete preliminary scene investigation.

   a. They failed to assign subject matter experts to the preliminary investigation.

   b. They failed to interview all witnesses.

   c. They failed to collect written/recorded witness statements.

   d. They failed to collect relevant physical evidence.

   e. They failed to treat the crash scene as a possible crime scene.

   f. They failed to secure the scene of the crash.

   g. They allowed non-first-responders to enter the scene and remove evidence.

   h. Dayton Police Department failed to conduct a complete follow-up investigation.

   i. They failed to assign available subject matter expert staff to conduct the investigation or to mentor the inexperienced assigned officer and Sergeant K. Seibert.

   j. They failed to determine if the crash met the elements needed for a criminal charge.

7.  They failed to procure medical records showing the presence or absence of Morgan White's intoxication.

8.  They failed to collect written/recorded statements from witnesses post-incident.

9.  They failed to recognize the seriousness of the injuries resulting from the crash.

10.  Dayton Police Department knowingly and intentionally suppressed the completion of a criminal investigation into the driving facts and condition of Morgan White.

11.  Members of the Dayton Police Department command staff actively deceived Mrs. Quiroz about the investigation, Madelyn Quiroz's parent, Marina Quiroz, regarding the progress of the investigation and the personnel that were assigned to the incident, specifically;

12.  They failed to disclose which officer was assigned to investigate the incident.

13.  **Defendant, City of Dayton Former Mayor Caroline Wadzeck.** White female, located in Texas.  Through its City Secretary,  may be served with summons at City Hall, 117 Cook Street, Dayton Texas 77535 or wherever she may be found and she was  acting under color of law.

14.  City of Dayton Former Mayor Caroline Wadzeck while acting under the color of law discriminated against Madelyn Quiroz and she also denied Madelyn Quiroz life, liberty and property in the pursuit of happiness and she also denied Madelyn Quiroz equal protection of the law.  Former Mayor C. Wadzeck

allowed her staff members, Former City Manager/Theo Melancon, Former Deputy City Manager/Former Dayton Chief of Police Robert Vine and Former Captain John D. Coleman to fail the public by disregarding the S.H.I.N.E. principles (Service, Humility, Integrity, Nobility and Excellence) and to violate their own policy and procedures.  She also publicly announced her gratitude towards Former City Manager Theo Melancon, Former Chief of Police Robert Vine and Former Captain John D. Coleman by providing all  "A job well done" knowing their misconduct and allowing a faulty investigation to continue, depriving Madelyn Quiroz Crime Victim Compensation benefits for over two and a half (2½) years.  Leaving Madelyn Quiroz with limited support and medical care.  Note:  The first twelve (12) months are the most critical time to receive proper and adequate medical treatment for spinal cord injury for healing and progression.

15. nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

16. **Defendant, City of Dayton, Former City Manager/Theo Melancon**  White male, City of Dayton, Former City Manager Theo Melancon, may be served with summons at Dickinson City Manager Theo Melancon, City Hall @ Farm to

Market Road 517, Dickinson, TX 77539 or wherever he may be found and he was acting under the color of law.

17. City of Dayton, Former City Manager Theo Melancon while acting under color of law discriminated against Madelyn Quiroz and he also denied Madelyn Quiroz life, liberty and property in the pursuit of happiness. He denied Madelyn Quiroz equal protection of the law. He failed to supervise by allowing his staff members, Former Deputy City Manager/Former Dayton Chief of Police Robert Vine and Former Captain John D. Coleman failed the public by disregarding the S.H.I.N.E. principles (Service, Humility, Integrity, Nobility and Excellence) and to violate their own policy and procedures, and by allowing a faulty investigation to continue, depriving Madelyn Quiroz Crime Victim Compensation benefits for over two and a half (2½) years. Leaving Madelyn Quiroz with limited support and medical care. Note: The first twelve (12) months are the most critical time to receive proper and adequate medical treatment for spinal cord injury for healing and progression.

18. Mr. Melancon also created a culture of racism by requiring department heads and directors to read a book titled "The Lessons of History" by Will and Ariel Durant. Excerpts:

> *"The Lessons of History" by Will & Ariel Durant The book says the following things: "the species man is composed of distinct races inherently different (like individuals) in physical structure, mental capacity, and qualities of character; and that one race the "Aryan," was by nature superior to all the rest." And "History shows that all civilization derives from the white race, that none can exist without its help, and that society is great and brilliant only so far as it preserves*

*the blood of the noble group that created it." And "Environmental advantages (argued Gobineau) cannot explain the rise of civilization, for the same kind of environment (e.g. soil-fertilizing rivers) that watered the civilizations of Egypt and the Near East produced no civilization among the Indians or North America" And "The rise, success, decline, and fall of a civilization depend upon the inherent quality of the race. The degeneration of a civilization is what the word itself indicates – a falling away from the genus, stock, or race. "Peoples degenerate only in consequence of the various mixtures of blood which they undergo." Usually this comes through intermarriage of the vigorous races with those whom it has conquered. Hence the superiority of the whites in the United States and Canada (who did not intermarry with the Indians) to the whites in Latin America (who did)."*

19. **Defendant, City of Dayton Former Deputy City Manager/Chief of Police Robert Vine-** White male, may be served with summons at City of Paris, Texas. Assistant City Manager, Robert Vine 150 1st St SE, Paris, TX 75460 or wherever he may be found and he was acting under the color of law

20. Former Dayton Deputy City Manager/Dayton Chief of Police Robert Vine while acting under color of law discriminated against Madelyn Quiroz and he also denied Madelyn Quiroz life, liberty and property in the pursuit of happiness. He denied Madelyn Quiroz equal protection of the law.

21. Former Chief Robert Vine failed to supervise his staff . He and his staff failed the public by disregarding the S.H.I.N.E. principles (Service, Humility, Integrity, Nobility and Excellence) and to violate their own policy, procedures and best practices, and allowing a faulty investigation to continue, depriving Madelyn Quiroz Crime Victim Compensation benefits for over two and a half (2½) years.

Leaving Madelyn Quiroz with limited support and medical care.  Note:  The first twelve (12) months are the most critical time to receive proper and adequate medical treatment for spinal cord injury for healing and progression.

22. Private Investigator Prado, who was hired by the city of Dayton found Former Chief Robert Vine in violation of "Failure to Supervise" and he was untruthful.

23. The report states that Chief Vine believes that with the information about the Herrera message to Quiroz (sent via facebook messenger) That lead should have been followed up at the school.

24. {"Good evening Mrs. Quiroz were you aware that the young lady was driving high.  I was told by my son that Morgan was High and being careless.  Didn't know if you knew."}

25. However; Private Investigator Prado located an email from Mayor Caroline Wadzeck to Chief Vine, dated October 26th, 2020, with the third-party information and a copy of the Facebook message to Ms. Quiroz from Nathan Herrera sent via facebook messenger, {"Good evening Mrs. Quiroz were you aware that the young lady was driving high.  I was told by my son that Morgan was High and being careless.  Didn't know if you knew."}

26. Private Investigator Prado states in his report that he believes that a complete review of all the facts and circumstances of this case along with the complaint from Ms. Quiroz, Chief Vine would have recognized the deficiencies mainly that

the occupants in the car were never interviewed.  This is a violation of General Order 7.31 III 1 (a).

27. Former Chief Robert Vine allowed Dayton Police Department Law Enforcement personnel to utilize marked police patrol units to harass and intimate the Quiroz family by passing by their residence which sits on a dead end street and to also by sitting stationary on Farm to Market Road 1008, near the entrance of their street.  This was never a known site for traffic enforcement prior to the complaint from Mrs. Quiroz to Dayton City Manager,  Chief of Police Robert Vine, Captain John D.  Coleman and City Council.

28. Deputy City Manager/Chief Robert Vine took the case into his own possession, stopping the clock jeopardizing the statutes of limitations, another stalled tactic.  He allowed all four (4) body camera  footage to be deleted.  He denied Mrs. Quiroz an accident reconstruction investigation.

29. **Defendant, City of Dayton Former Police Captain John D. Coleman.** White male, may be served summons Bailiff John D. Coleman % Judge Wesley Hinch, County Court #2, 1923 Sam Houston Street, Liberty, TX 77575 or wherever he may be found and he was acting under color of law.

30. City of Dayton Former Police Captain  John D. Coleman, while acting under the color of law, discriminated against Madelyn Quiroz and he denied Madelyn Quiroz life, liberty and property in the pursuit of happiness.  He denied Madelyn

Quiroz equal protection of the law.  Former Captain John D. Coleman arrived at the scene immediately when the dispatcher announced that Morgan White was involved in the collision. He was the senior officer on the scene. Lieutenant Burleigh was on scene as well and Lieutenant Burleigh advised dispatch to notify Expert Accident Reconstructionist Officer David Meyers to the scene.

31. Officer David Meyers was never contacted nor was he ever assigned to the case.  Former Captain Coleman also denied Mrs. Quiroz's request for an accident reconstruction investigation. He stated they did not have the resources. However, he was untruthful. The police department had two on their payroll. Mrs.  Quiroz requested he contact the Department of Public Safety Troopers and he stated he would not bother them with this.  Former Captain Coleman allowed an non-first-responder  (unidentified as of today) white male to enter the active crime scene, enter the vehicle and remove property and evidence from the driver side floorboard.

32. A female employee of Henscey Electric & Air Conditioning located at 708 Waco Street, Dayton, TX 77535 which is where the racing occurred told Mrs. Marina Quiroz their business cameras were working and would have recorded the activity of their parking lot and the roadway.  She was very pleasant and requested Mrs. Quiroz to come the following day so that she could obtain the video pass code.  Mrs. Quiroz returned the following day and a male employee

who was unpleasant and cold who stated that there was no video. A Witness stated Former Captain Coleman told the business owner of Henscey Electric & Air Conditioning and members of the community that Morgan White was traveling at 40 miles per hour. On the scene, Former Captain John Coleman spoke with the The Liberty County Fire Department Emergency Medical Service who submitted in their report that the driver (Morgan White) was traveling at 40 miles per hour. (Morgan White was telling students that she was traveling at 40 miles per hour.) Vehicle Event Data Recorder report reflects that Driver Morgan White was traveling 96 miles per hour on a 30 miles per hour roadway, at time of impact.

33. Former Police Captain John D. Coleman failed to supervise. He and his staff failed the public by disregarding the S.H.I.N.E. principles (Service, Humility, Integrity, Nobility and Excellence) and to violate their own policy, procedures and best practices, and allowing a faulty investigation to continue, depriving Madelyn Quiroz Crime Victim Compensation benefits for over two and a half (2½) years. Leaving Madelyn Quiroz with limited support and medical care. Note: The first twelve (12) months are the most critical time to receive proper and adequate medical treatment for spinal cord injury for healing and progression.

34. Private Investigator Prado's report indicates that Officer Duos who was on the scene later had a conversation and suggested to Captain Coleman that he believed this case should be investigated as reckless driving and Captain Coleman told him to stay out of it that he, Officer Duos was no longer in Criminal Investigation Division and was now on Patrol.

35. **Defendant, City of Dayton Police Former Criminal Investigation Division Lieutenant Terri Hughes-** White female, may be served summons at Liberty County Constable Precinct 1, Constable Terri Hughes, 2103 Cos Street, Liberty, Texas 77535 or wherever she may be found and she was acting under color of law.

36. City of Dayton Police Former Criminal Investigation Division Lieutenant Terri Hughes, while acting under the color of law, discriminated against Madelyn Quiroz and she denied Madelyn Quiroz life, liberty and property in the pursuit of happiness. She denied Madelyn Quiroz equal protection of the law. Lieutenant Terri Hughes was the custodian for the department body cameras. All officers who were on the scene body camera footage were deleted. She previously worked for over 10 years at the Liberty County District Attorney's office as an Investigator, knowing that the District Attorney does not handle juvenile cases. However, she was assigned to the case file and submitted the incomplete intake

case file to the District Attorney's office where it sat for over five (5) months, a stall tactic to run the time for statutes of limitations.

37. After Mrs. Quiroz made several status requests, former Lieutenant Terri Hughes submitted an incomplete intake case file to the Liberty County Attorney Matthew Poston's office who handles juvenile cases. Former Lieutenant Terri Hughes requested that the incomplete intake case file be denied or accepted. She knew not all the details were in it. The Investigative suggestions to Former Lieutenant Terri Hughes from the Assistant County Attorney McCarty were not followed. She was untruthful to Mrs. Quiroz when she stated she was not the investigator assigned to the case. She never interviewed the driver, Morgan White, passengers in the vehicle or witnesses from the crash scene or witnesses who got high with Morgan or observed her getting high throughout the day at the Dayton High School premises. Nathan Herrera, who was the father of a witness who had knowledge of the drug usage of the driver, was never contacted. This information was the reason for the failed attempt to get a subpoena for Morgan White's medical records. She failed the public by disregarding the S.H.I.N.E. principles (Service, Humility, Integrity, Nobility and Excellence) and to violate their own policy, procedures and best practices, and she lied to cover up the faulty investigation. She deprived Madelyn Quiroz Crime Victim Compensation benefits for over two and a half (2½) years. Leaving Madelyn Quiroz with

limited support and medical care. Note: The first twelve (12) months are the most critical time to receive proper and adequate medical treatment for spinal cord injury for healing and progression.

38. Private Investigator Prado's report states that Lieutenant Terri Hughes's own conduct shows that even if she believed that Sergeant K. Seibert was the investigating officer, she intentionally withheld numerous emails and pertinent information that an assigned investigator should have. He also states, it is his opinion and belief that whether by negligence, incompetence or intentionally, Lt. Hughes, failed to perform her obligations/duties in this case, which should have resulted in the apprehension of a person on at least one felony offense. He found a variety of investigative errors and reporting deficiencies as well as misleading information that formed his opinion. It is also his belief that a totality of the facts and circumstances in this case are in violation of Dayton Police Department General Orders Policy 2.1 Code of Conduct III Code of Ethics.

39. Private Investigator Prado states that he believes that when the totality of the facts and circumstances around this investigation reviewed a reasonable person would conclude that Lieutenant Hughes acted intentionally and hindered this investigation since July 2020 until January of 2022, possibly with malice.

40. Private Investigator Prado investigation report states, the case eventually resulted in one felony count of Aggravated Assault and most likely a second

count of Aggravated Assault.  The victims in this case, the Quiroz Family, spent over $20,000.00 attempting to find the facts in this case.  This same Family also could have had assistance from the Crime Victims Compensation Fund for the last two years that they did not receive.

41. Private Investigator Prado stated in his report that his recommendation to sustain the complaint of Lieutenant Terri Hughes for Dereliction of Duty.

42. Former Lieutenant Terri Hughes was a District Attorney Investigator for over 10 years prior to being employed by the  Dayton Police Department.  Even after her termination, she became employed within 3 months  with Liberty County Constable Precinct One.

43. **<u>Defendant, City of Dayton Police Sergeant Kristen Seibert.</u>**  White female. Through its City Secretary,  may be served with summons at City Hall, 117 Cook Street, Dayton Texas 77535 or wherever she may be found and she was acting under color of law

44. City of Dayton Police Sergeant Kristen Seibert, while acting under the color of law, discriminated against Madelyn Quiroz and she denied Madelyn Quiroz life, liberty and property in the pursuit of happiness.  She denied Madelyn Quiroz equal protection of the law. She also is in violation by disregarding the S.H.I.N.E. principles (Service, Humility, Integrity, Nobility and Excellence) and to violate their own policy, procedures and best practices, and allowing a faulty

investigation to continue, depriving Madelyn Quiroz Crime Victim Compensation benefits for over two and a half (2½) years. Leaving Madelyn Quiroz with limited support and medical care. Note: The first twelve (12) months are the most critical time to receive proper and adequate medical treatment for spinal cord injury for healing and progression. Sergeant Kristen Seibert's body camera footage was deleted. Sergeant K. Seibert was the lead Field Training Officer for Rookie of four (4) weeks. Seibert's Initial Investigation report does not exist. Dayton PD Case # 120573 only has supplemental reports. The supplemental reports are missing pertinent data and inaccurate information was documented. Sergeant K. Seibert was untruthful about photos of the vehicle and of the scene. Sergeant K. Seibert observed Morgan White being assessed, tended to and loaded up by Allegiance Emergency Medical Services and was ground transported with non-life threatening injuries to Methodist Hospital in Baytown prior to Madelyn Quiroz. Sergeant K. Seibert and her trainee documented that Morgan White was life flighted. Mrs. Quiroz brought this to the attention of Sergeant K. Seibert, Captain Coleman, Chief Vine and the city council members no-one would not correct the report until 2 years later when Detective Dale made a correction on the report. Sergeant Kristen Seibert falsified witness statements on her supplement report.

45. Private Investigator Prado's investigation reported that Sergeant K. Seibert failed to inventory the vehicle to preserve property that was within the vehicle and document it with an inventory in violation of General Orders 7.16V. An Inventory would have documented Madelyn Quiroz's cell phone, estimated value of $1,000.00 and the property of Driver, Morgan White in the front floor board that was removed by the unknown male. Sergeant K. Seibert is seen via patrol vehicle dash camera, speaking to the non-first-responder, white male on scene and she allows him to enter the crime scene. The white male is seen removing property and evidence from the driver side vehicle floor board.

46. **Defendant, The City of Dayton Volunteer Fire Department** Through its City Secretary, may be served with summons at City Hall, 117 Cook Street, Dayton Texas 77535 or wherever it may be found and was acting under color of law

47. The City of Dayton Volunteer Fire Department, while acting under the color of law, discriminated against Madelyn Quiroz and denied Madelyn Quiroz life, liberty and property in the pursuit of happiness. Denied Madelyn Quiroz equal protection of the law. Failed to provide timely medical attention post-crash. Failed the public and victim, Madelyn Quiroz, a minor.

48. **Defendant, The City of Dayton Volunteer Fire Department, Former Chief Murphy Green.** White male. Through its City Secretary, he may be served

with summons at City Hall, 117 Cook Street, Dayton Texas 77535 or wherever he may be found and he was acting under color of law

49. The City of Dayton Volunteer Fire Department, Former Chief Murphy Green was acting under color of law when he discriminated against Madelyn Quiroz and he denied Madelyn Quiroz life, liberty and property in the pursuit of happiness. He denied Madelyn Quiroz equal protection of the law. Failed to provide timely medical attention post-crash. An argument ensued on scene with City  of Dayton Fire Chief Murphy Green and Allegiance Medical Service Paramedic Steve Smith about contacting Life Flight or not for Madelyn Quiroz which caused a serious delay of activating Level 1 Trauma protocols. He failed the public and minor victim, Madelyn Quiroz. Life flight was ultimately employed after the argument dissipated wasting valuable time approximately 5-10minutes when EMS finally arrived. The investigative report states that Life Flight was contacted by Liberty County Emergency Medical Service, who was the last Emergency response team that arrived at the scene.

50. **Defendant, Liberty County District Attorney Jennifer Bergman Harkness**, White female. She may be served with summons 1923 Sam Houston Street, Liberty, Texas 77575 or wherever she may be found and she was acting under color of law.

51. District Attorney Jennifer Bergman Harkness discriminated against Madelyn Quiroz and she denied Madelyn Quiroz life, liberty and property in the pursuit of happiness and she also denied Madelyn Quiroz equal protection of the law.

52. District Attorney Jennifer Bergman Harkness refused Mrs. Quiroz's request to meet with her for over two years. In attempts for the District Attorney J. Bergman Harkness and her staff to conduct a full and proper investigation into Dayton Police Department  Case # 120573.  After two (2) years,  Dayton Police Lieutenant Terri Hughes was terminated by Dayton Police Chief Woods for Dereliction of duty for the role she played in Dayton Police Department Case #120573.  Soon after, Mrs. Quiroz also contacted Texas Ranger Bess and requested a full and proper investigation in Dayton Police Department Case # 120573. Ranger Bess stated that the last time he tried helping Mrs. Quiroz, he got mud slung at him after meeting with District Attorney J. Bergman Harkness and County Attorney Matthew Poston. He contacted Mrs. Quiroz, stated he spoke to District Attorney Jennifer Bergman Harkness about Former Dayton Police Lieutenant Terri Hughes who was terminated for deletion of duty will not pursue any charges  on Terri Hughes because she feels that the body camera footage that Lieutenant  Terri Hughes was in charge of as custodian of the body camera were deleted by  accident. District Attorney J. Bergman Harkness or her office never investigated the misconduct and the faulty investigation, However,

came to the conclusion that it was a mistake. District Attorney J. Bergman Harkness failed the public and victim, Madelyn Quiroz. Madelyn was deprived equal protection of the law and denied due process of the law.

53. **Defendant, Liberty County Attorney Matthew Poston,** White male. He may be served with summons at 1923 Sam Houston Street, Liberty, Texas 77575 or wherever he may be found.

54. Liberty County Attorney Matthew Poston is being sued in his individual capacity and, at all times relevant to this case, acting under the color of law as a policymaker for Liberty prosecutions and worked to deny the equal protections under the 14th amendment in deciding which victims of crimes he/she would seek charges against and obstruct justice. In particular, refusing to pursue claims against White suspects on behalf of Hispanic females.

55. Liberty County Attorney Matthew Poston discriminated against Madelyn Quiroz. He denied Madelyn Quiroz life, liberty and property in the pursuit of happiness and he also denied Madelyn Quiroz equal protection of the law.

56. Liberty County Attorney Matthew Poston failed to ensure that Dayton Police Department acted following standard practice during the follow-up investigation of the incident.

57. Liberty County Attorney Matthew Poston failed to provide much-needed guidance and direction to Dayton Police Department, even though he is

responsible for adjudicating all criminal cases involving minors in Liberty County.

58. Liberty County Attorney Matthew Poston failed to recognize and correct inconsistencies and errors in the handling of the investigation by the Dayton Police Department, even when he was made aware of these failures.

59. Once the incident investigation was completed and a criminal charge was brought against Morgan White, County Attorney Matthew Poston failed to act in good faith and admitted that he and his office failed to meet their legal due diligence, leaving Madelyn with few options for legal redress.

60. Liberty County Attorney Matthew Poston has deliberately failed Madelyn Quiroz.

61. The County Attorney's office failed to notify Madelyn that the assigned Judge, Judge Chambers, recused himself from the case.

62. The County Attorney's office failed to notify Madelyn that Montgomery County Judge Martin took over the case from Judge Chambers.

63. On Tuesday, May 10, 2022 Judge called docket for a criminal case Court Cause No (S). 22CC-JUV-00006. (Tuesdays are typically civil cases that are heard).

64. The County Attorney's office failed to notify Madelyn of any court proceedings related to The State of Texas vs Morgan Skye White. No (S). 22CC-JUV-00006.

65. Liberty County Attorney Matthew Poston admitted that he and his office were at fault for failing to meet their legal due diligence, leaving Madelyn with few options for justice.  Now since Morgan White is an adult, there is nothing they can do to move forward with prosecuting the case unless some unknown evidence presents itself prior to Morgan's 18th birthday.

66. Liberty County Attorney Matthew Poston has evidence that was unknown prior to Morgan's 18th birthday and was submitted after she turned 18 years old. A witness submitted a statement that she saw Morgan and Alexia getting high in the school restroom, minutes before driving away from school and eventually into the crash.  Despite this, Liberty County Attorney Matthew Poston feels like it would be too hard to try this case, so he has made it very clear that he will not submit this new evidence.

67. Note:  The evidence was in the file prior to trial, but he nor Prosecutor Saldana did not introduce it.  Liberty County Matthew Poston denied having that new evidence, until Mrs. Quiroz spoke to the new Chief of Police, Chief Woods and he confirmed evidence was submitted. (case file has witnesses stating that they got high with Morgan every morning and another witness who stated Morgan was getting high in the parking lot prior to leaving the school).

68. Liberty County Matthew Poston admitted that he received the new evidence. Specifically, a new witness, unknown to anyone before Morgan White turned 18 years old, who could testify to Morgans' impairment before the crash.

69. Liberty County Attorney Prosecutor Saldana has never spoken with Madelyn, nor has he ever been involved in the case prior to the court proceedings.

70. Liberty County Attorney Matthew Poston, Prosecutor Saldana and Prosecutor McCarty admitted they have never viewed any videos related to the case.

71. May 10, 2022 Court Trial No (S). 22CC-JUV-00006 transcript reads:

72. Judge Martin gave prior notice for the state to notify all parties involved.

73. Liberty County Matthew Poston's office contacted Sergeant K. Seibert and Detective Dale the morning of trial and Liberty County Matthew Poston stated Former Lieutenant Terri Hughes was out of town in Dallas.

74. Morgan White, Morgan's Attorney, and Morgan's mother all appeared in court.

75. Motion that is filed by Morgan's attorney, Mr. Turner to dismiss is "Granted".

76. **<u>Defendant, Liberty County Assistant Attorney Matthew Saldana</u>** ,Hispanic male.  He may be served with summons at 1923 Sam Houston Street, Liberty, Texas 77575 or wherever he may be found and he was acting under color of law.

77. Liberty County Assistant Attorney Matthew Saldana is being sued in his individual capacity and, at all times relevant to this case, acting under the color of law as a policymaker for Liberty prosecutions and worked to deny the equal

protections under the 14th amendment in deciding which victims of crimes he/she would seek charges against and obstruct justice. In particular, refusing to pursue claims against White suspects on behalf of Hispanic females.

78. Liberty County Assistant Attorney Matthew Saldana discriminated against Madelyn Quiroz. He denied Madelyn Quiroz life, liberty and property in the pursuit of happiness and he also denied Madelyn Quiroz equal protection of the law.

79. The County Attorney's office failed to notify Madelyn that Montgomery County Judge Martin took over the case from Judge Chambers.

80. On Tuesday, May 10, 2022 Judge called docket for a criminal case Court Cause No (S). 22CC-JUV-00006. (Tuesdays are typically civil cases that are heard)

81. The County Attorney's office failed to notify Madelyn of any court proceedings related to The State of Texas vs Morgan Skye White. No (S). 22CC-JUV-00006.

82. Liberty County Attorney Matthew Poston admitted that he and his office were at fault for failing to meet their legal due diligence, leaving Madelyn with few options for justice. Now since Morgan White is an adult, there is nothing they can do to move forward with prosecuting the case unless some unknown evidence presents itself prior to Morgan's 18th birthday.

83. Liberty County Attorney Matthew Poston has evidence that was unknown prior to Morgan's 18th birthday and was submitted after she turned 18 years old. A

witness submitted a statement that she saw Morgan and Alexia getting high in the school restroom, minutes before driving away from school and eventually into the crash. Despite this, Liberty County Attorney Matthew Poston feels like it would be too hard to try this case, so he has made it very clear that he will not submit this new evidence.

84. Note: The evidence was in the file prior to trial, but he nor Prosecutor Saldana did not introduce it. Liberty County Matthew Poston denied having that new evidence, until Mrs. Quiroz spoke to the new Chief of Police, Chief Woods and he confirmed evidence was submitted. (case file has witnesses stating that they got high with Morgan every morning and another witness who stated Morgan was getting high in the parking lot prior to leaving the school).

85. Liberty County Matthew Poston admitted that he received the new evidence. Specifically, a new witness, unknown to anyone before Morgan White turned 18 years old, who could testify to Morgans' impairment before the crash.

86. Liberty County Attorney Prosecutor Saldana has never spoken with Madelyn, nor has he ever been involved in the case prior to the court proceedings.

87. Liberty County Attorney Matthew Poston, Prosecutor Saldana and Prosecutor McCarty admitted they have never viewed any videos related to the case.

88. May 10, 2022 Court Trial No (S). 22CC-JUV-00006 transcript reads:

89. Judge Martin gave prior notice for the state to notify all parties involved.

90. Liberty County Matthew Poston's office contacted Sergeant K. Seibert and Detective Dale the morning of trial. Liberty County Matthew Poston stated Former Lieutenant Terri Hughes was out of town in Dallas.

91. Morgan White, Morgan's Attorney, and Morgan's mother all appeared in court.

92. Motion that is filed by Morgan's attorney, Mr. Turner to dismiss is "Granted".

93. Liberty County Assistant Prosecutor McCarty was the initial assigned prosecutor when the Liberty County Attorney's office received the said case and she has spent many hours on the case; to include speaking with Madelyn and Marina Quiroz. But was removed as the Prosecutor at time of Trial proceedings.

94. **Defendant, The City of Liberty Fire Department Emergency Medical Service**. May be served with summons at 1912 Lakeland, Liberty, Texas 77575 or wherever he may be found and he was acting under color of law.

95. The City of Liberty Fire Department Emergency Medical Service discriminated against Madelyn Quiroz and denied Madelyn Quiroz life, liberty and property in the pursuit of happiness and he also denied Madelyn Quiroz equal protection of the law.

96. Flavio Quiroz, Madelyn's father, was denied access to her by the City of Liberty Fire Emergency Medical Service paramedics Alvarez and Grimes. At the time of the motor vehicle collision , Madelyn was a minor. Mr. Quiroz was denied

access to his child numerous times and dismissed by slamming the rear door to the ambulance, almost catching Mr. Quiroz's hand between the doors.  Medical history for Madelyn was not obtained by Emergency Medical Services due to this action as well as authorizations.  This is evident not only by Mr. Quiroz's public statements and complaint to the Dayton City Council, but to the empty medical history sections and signature by LifeFlight in place of the guardian.

97. **Defendant, The City of Liberty Fire Department Emergency Medical Service Paramedic Katelyn Grimes.**  White female. She may be served with summons at 1912 Lakeland, Liberty, Texas 77575 or wherever she may be found and she was acting under color of law.

98. The City of Liberty Fire Department Emergency Medical Service Paramedic Katelyn Grimes discriminated against Madelyn Quiroz and denied Madelyn Quiroz life, liberty and property in the pursuit of happiness and he also denied Madelyn Quiroz equal protection of the law.

99. Flavio Quiroz, Madelyn's father, was denied access to her by the City of Liberty Fire Emergency Medical Service paramedics Alvarez and Grimes.  At the time of the motor vehicle collision , Madelyn was a minor.  Mr. Quiroz was denied access to his child numerous times and dismissed by slamming the rear door to the ambulance, almost catching Mr. Quiroz's hand between the doors.

100.  Medical history for Madelyn was not obtained by Emergency Medical Services due to this action as well as authorizations.  This is evident not only by Mr. Quiroz's public statements and complaint to the Dayton City Council, but to the empty medical history sections and signature by LifeFlight in place of the guardian.

101.  **Defendant, Allegiance Mobile Health Emergency Medical Service.**  May be served with summons at 201 East 4th Street, Livingston, Texas 77351 or wherever he may be found and he was acting under color of law.

102.  Allegiance Mobile Health Emergency Medical Service discriminated against Madelyn Quiroz and denied Madelyn Quiroz life, liberty and property in the pursuit of happiness and he also denied Madelyn Quiroz equal protection of the law.

103.  Allegiance Mobile Health Emergency Medical Service allowed Paramedic to violate policy and procedures by not submitting an incident call report.

104.  An argument ensued on scene with Allegiance Medical Service Paramedic Steve Smith and City of Dayton Fire Chief Murphy Green about contacting Life Flight or not for Madelyn Quiroz which contributed to the delay of activating Level 1 Trauma protocols. He failed the public and minor victim, Madelyn Quiroz.

105. **Defendant, Allegiance Mobile Health Medical Service Paramedic Steve Smith.** White male.  May be served with summons at 201 East 4th Street, Livingston, Texas 77351 or wherever he may be found and he was acting under color of law.

106. Allegiance Mobile Health Emergency Medical Service Paramedic Steve Smith discriminated against Madelyn Quiroz and denied Madelyn Quiroz life, liberty and property in the pursuit of happiness and he also denied Madelyn Quiroz equal protection of the law. He failed the public and victim, Madelyn Quiroz, a minor.

107. An argument ensued on scene with Allegiance Medical Service Paramedic Steve Smith and City of Dayon Fire  Chief Murphy Green in reference to contacting Life Flight or not for Madelyn Quiroz which resulted in the delay of activating Level 1 Trauma protocols and medical care for Madelyn's obvious and serious medical needs.

108. Per Investigation of Motor Vehicle Collision (MVC) of 01/23/2020. Resulting in the Injuries of Madelyn Quiroz.

109. On January 23, 2020, at 1449 Madelyn Quiroz (16) was the seatbelt restrained, backseat passenger in a 2014 Nissan Maxima sedan vehicle that was being driven and operated by Morgan White (16). Ms. White was traveling at a high rate of speed going south on Waco Street towards TX-US Hwy 90, when

she lost control of her vehicle at the Railroad crossing that enters into the Rail yard owned and operated by Burlington Northern Santa Fe Corporation (BNSF) Railroad.  The vehicle became airborne landing on the rails owned by Union Pacific Railroad.

110.   According to video evidence, Allegiance Mobile Health Emergency Medical Service Paramedic Steve Smith violated Texas DSHS 157.2(1) and RCW 74.34.020 (1).

111.   Allegiance Mobile Health Emergency Medical Service Paramedic Steve Smith failed to properly assess Ms. Madelyn Quiroz's injuries thus delaying her treatment and transport to a Level 1 Trauma Facility.  Had an assessment been done, Mr. Smith would have known that Ms. Madelyn Qurioz had multiple life threatening injuries, including but not limited to; internal bleeding as found to be evident by the City of Liberty Fire Emergency Medical Service personnel, who upon their assessment, activated Trauma Protocol and immediately requested air transport to Memorial Hermann Medical Center a Level 1 Trauma Center, for treatment.  Evidence shows that Allegiance Mobile Health Emergency Medical Service Paramedic Steve Smith is negligent to provide medical treatment, denied medical treatment, withheld medical treatment and abandoned Ms. Madelyn Quiroz. Allegiance Mobile Health Emergency Medical Service Paramedic Steve

Smith instead, left a critical patient in the care of a much lower level Emergency Medical Technician without ALS ability and did not activate Trauma Protocol.

112.   The investigation also brings forth physical evidence. The City of Liberty Fire Emergency Medical Service took a report from Allegiance Mobile Health Emergency Medical Service Paramedic Steve Smith. Evidence shows Paramedic Steve Smith did not do a detailed assessment of Ms. Madelyn Quiroz, yet gave a report to The City of Liberty Fire Emergency Medical Service as if he had and his assessment was accepted and documented as, Prior To Arrival (PTA).

113.   **Defendant, Ramji Law Group a.k.a. Adam Ramji** . May be served with summons at 9186 Katy Freeway, Houston, Texas 77055 or wherever he may be found and he was acting under color of law.

114.   Ramji Law Group a.k.a. Adam Ramji deprived Madelyn Quiroz life, liberty and property in the pursuit of happiness and also denied Madelyn Quiroz equal protection of the law.

115.   Madelyn was under duress when  directed to sign a release of record/contract while she was under doctors care. Madelyn was inpatient at the Kennedy Krieger Rehabilitation for treatment due to her paraplegia condition which included mental healthcare.

116.   Ramji Law Group interfered with a criminal investigation.  Communications began between Ramji Law Group and the City of Dayton, Attorney Brandon Davis and Adam Ramji backed off from pursuing open records.  Ramji Law Group also approved the  release of the wrecked 2014 Nissan Maxima for Investigational purposes and defective product liability to Marina and Madelyn Quiroz .

117.   **Defendant, Jamey Wayne Bice a.k.a. Jaime/James & Jamey Bice,**  White male, is an individual resident of Liberty County and he may be served with summons at Jamey Bice a.k.a. Jaime/James & Jamey Bice % Union Pacific Railroad, 1400 Douglas Street, Omaha, NE 68179 or wherever he may be found.

118.   Jamey Bice a.k.a. Jaime/James & Jamey Bice interfered  in a criminal investigation.  He denied Geico Insurance company to release the wrecked 2014 Nissan Maxima for Investigational purposes and defective product liability to Marina and Madelyn Quiroz.

119.   **Defendant, Stephanie Lee Blum Bice.**  White female, is an individual resident of Harris County and she may be served with summons at 10042 Stone Briar Drive, Baytown, Texas 77521 or wherever she may be found.

120.   Stephanie Lee Blume Bice interfered in a criminal investigation.  She denied Geico Insurance company to release the wrecked 2014 Nissan Maxima for Investigational purposes and defective product liability to Marina and Madelyn

Quiroz.  Stephanie Lee Blume Bice took Morgan White to the hospital uninvited and unannounced whose callous actions caused Madelyn Quiroz excruciating pain and extreme mental anguish.

121. **Defendant, Morgan Skye White.** White female.  is an individual resident of Harris County and she may be served with summons at 10042 Stone Briar Drive, Baytown, Texas 77521 or wherever she may be found.

122. Morgan White was driving recklessly and was chasing then racing with Eduardo Hernandez before the horrific vehicle collision.

123. Morgan White was traveling over 96-mph on a 30-mph roadway.

124.  Morgan White caused Madelyn Quiroz to become paralyzed.

125. Witnesses observed Morgan getting high before school, during lunch and at the end of last period.

126. Morgan White arrived at Memorial Hermann hospital after Mrs. Quiroz did not respond to Morgan White's text.  Morgan White harassed and intimidated Madelyn Quiroz by showing up unannounced and took pictures of Madelyn's disabled left arm. Morgan was able to see that Madelyn was paralyzed and she told Madelyn that she (Morgan ) did nothing wrong and that this could have happened to anyone.  She caused Madelyn extreme pain and anguish by telling Madelyn that at least she still had her smile.  Morgan took no accountability for her actions that caused Madelyn's serious bodily injuries that caused her to

become paralyzed that Madelyn's stomach instantly began hurting and Madelyn was violently vomiting.  Nurses had to be called.

127.   **Defendant, Eduardo Hernandez.**   Hispanic male. is an individual resident of Liberty County and may be served with summons at 545 County Road, Dayton, TX 77535 or wherever he may be  found. He was driving recklessly and was racing with Morgan White.  He later admitted to driving at a high rate of speed of over 85 miles per hour on a 30 miles per hour roadway ( Morgan White had crossed the double solid marked lane, facing against traffic, chasing him, racing him) and stated he felt responsible when he found out that Madelyn was life flighted and he fell to his knees.

128.   **Defendant, NISSAN North America a.k.a. NISSAN Motor Corporation** may be served with summons at 1 Nissan Way, Franklin, TN 37067 or wherever the corporation may be found.

129.   NISSAN North America a.k.a. NISSAN Motor Corporation ("Nissan" herein) deprived Madelyn Quiroz life, liberty, property and in the pursuit of happiness.  Nissan North America also denied Madelyn Quiroz was neglgenct in putting a defective product in commerce.. Nissan safety mechanisms were defective, contributing to Madelyn's catastrophic injuries.

130.   NISSAN North America a.k.a. NISSAN Motor Corporation failed Madelyn Quiroz by producing and manufacturing a vehicle with safety hazards. Madelyn

Quiroz was deprived of proper safety measures. Public complaints for Nissan Vehicles are noted with brake and airbag defects.  According to the driver, the brakes failed.The back seat airbags didn't deploy, leaving Madelyn with no safety protection, causing catastrophic injuries.

131.   **Defendant, Union Pacific Railroad**  may be served with summons at 1400 Douglas Street, Omaha, NE 68179 or wherever the corporation may be found.

132.   Union Pacific Railroad deprived Madelyn Quiroz life, liberty, property and in the pursuit of happiness.  They also denied Madelyn Quiroz equal protection of the law and interfered with a criminal investigation.

133.   While Ms. Marina Quiroz conducted the investigation, in reviewing the audio and visual of the Dayton Police  dash camera video. The  Dayton Police Department and dispatch stated that they were in contact with Union Pacific Railroad. The Union Pacific Railroad company was notified to stop any trains and also, that a vehicle left the roadway and crashed on their property. According to Sergeant K. Seibert. By policy and procedure, the Union Pacific Railroad are required to check for damages to the railroad property and equipment.  But, in this case, for some unknown reason, there was no report. Union Pacific Railroad, they stated they could not locate an initial, supplemental report or camera footage from their files. It was withheld in an effort to conspire to obstruct justice. According to the Dayton Police Department, there is an

unidentified white male who they claim was either Morgan's father or a Railroad employee.  Although Morgan's step father is employed as an engineer for Union Pacific, he is on scene in civilian clothes comforting Morgan. The unidentified white male is seen entering the active crime scene wearing a blue shirt, baseball cap, blue jeans with  radio by his hip, a camera and appears he is taking photos of the vehicle and is seen removing property and evidence from the driver's floorboard.  He then talks to Sergeant K. Seibert.  No record of this male or  his actions on any report.

## II.JURISDICTION AND VENUE

134.   This Court has jurisdiction over this case pursuant to 28 U.S.C Section 1331 as this is a Civil Rights action brought pursuant to 42 U.S.C 1983.

## III.  FACTUAL BACKGROUND

135.    This is a Civil Rights action brought pursuant to 42 U.S.C. Section 1983 and 1981 for her internal and external injuries by denying, delaying, refusing timely medical care for serious injuries of Madelyn Marina Quiroz causing her to become paralyzed and damages conducted in the state actors violation of Madelyn's Civil Rights under.

136.   The denial and one and half hour delay in providing medical care was due to an argument by Steve Smith, paramedic and the City of Dayton Fire Chief,

Murphy Green, acting under color of law, over whether to call Life Flight to transport to a hospital.

137. No assessment of Madelyn's medical condition, by the Allegiance Mobile Health Emergency Medical Service Paramedic, Steve Smith was conducted at the scene.

138. As a result of the lack of an assessment, the denial of reasonable medical care for an hour and a half after the collision, Plaintiff sustained serious bodily injuries and today is unable to walk.

139. On or about January 23, 2020- At approximately 2:45 p.m. Two vehicles were driving reckless and racing at a high rate of speed on Waco St. in Dayton.

140. The driver of the first vehicle, Morgan White, traveling on the opposite roadway against traffic, side by side with driver two, lost control, the vehicle went airborne and crashed onto railroad tracks, causing serious bodily injury to the back seat passenger in the car, Madelyn Quiroz.

141. The driver of the second vehicle stopped at the scene and later admitted he, too, was traveling at a high rate of speed.

142. City of Dayton first responders arrived shortly after the crash, including Dayton Police command staff.

143.   City of Dayton Volunteer Fire Department Chief Murphy Green contacted Mrs. Quiroz and informed her that Madelyn was involved in an accident and that she would be transported by ambulance to Kingwood Hospital.

144.   Mr. Flavio Quiroz later arrives at the scene and is told that Madelyn would be transported to Kingwood Hospital.  While on scene, Mr. Flavio Quiroz was later told that Madelyn would be life flighted.

145.   After an hour and 30 minute (1 ½)  long delay by the first responders on the scene to transport Madelyn to the hospital, she arrived at Memorial Hermann, Houston, Texas medical center.

146.   Madelyn sustained a broken back, a serious spinal cord injury, internal bleeding, five broken ribs, a partial collapsed lung, head trauma, face trauma, fractured nose, busted mouth, abdominal distention, bleeding spleen, three breaks in the left arm with a damaged radial nerve, abrasions and lacerations on bilateral hips.

147.   Due to these catastrophic injuries, Madelyn is now a paraplegic and confined to a wheelchair.

148.   The Dayton Police Officers, Captain John D. Coleman, Sergeant Kristein Seibert, Officer John Christopher Duos, Officer Donald McDaniel officers acting under color of law were deliberately indifferent to the  serious medical needs of Madelyn as a victim of the crime of vehicular assault.

149.  Rather than tend to the medical needs of the more seriously injured, Madelyn,  the officers triaged Morgan Skye White and provided her immediate medical care

150.  Morgan Skye White suffered less serious injuries in the accident. According to a witness on scene, Morgan never lost grip of her cell phone.

151.  The Dayton Officers failed to follow several of their own internal policies regarding the investigation of major traffic collisions.

152.  On January 31, 2020, the Vehicle Crash Data Event Recorder was pulled, and the data revealed that Morgan was traveling at 96 mph on a 30 mph roadway, at time of impact.

153.  Mrs. Marina Quiroz, the mother of Madelyn who was a Harris County Sheriff's Deputy and an advanced accident investigator,  contacted Dayton Police Captain John Coleman, who was acting  under color of law at the scene of the crash, and requested an Accident Reconstructionist to investigate the crash. Captain John Coleman refused.

154.  Mrs. Quiroz contacted Dayton Police Chief Robert Vine while he was acting under color of law and requested the Harris County Sheriff's Department to assist with an Accident Reconstruction.

155.  Dayton Police Chief Robert Vine failed to request assistance from Harris County Sheriff's Department.

156.   Mrs. Marina Quiroz  on June 2,  2021 filed a Freedom of Information request with the City of Dayton and  requested to see the body camera video, the dash camera video, photographs of the scene, photograph of the vehicles, videos of the intersection, data event documents, 911 call logs and any other documents related to the accident.

157.   The City of Dayton, submitted Mrs. Quiroz's Freedom of Information request to The Attorney General's office stated these records could be withheld if there is an active investigation.

158.   Mrs. Quiroz communicated with the Dayton Police Dispatcher Sgt. Ray, who stated the case was not being investigated because it was just an accident!

159.   On July 30, 2020 @ approximately 10:00am Lieutenant Terri Hughes communicated via email to Liberty County Assistant District Attorney McCarty that the mother of the injured is a law enforcement officer in Harris County and is not happy with the fact we believe this to be a motor vehicle ACCIDENT caused by failure to control speed (more than likely).

160.   However, the case records would not be released because the City of Dayton legal department claimed the police were conducting an active investigation.

161.   By October of 2021, no witnesses, including Madelyn were contacted, or interviewed by Dayton Police Department investigators.

162.   Lacking any formal investigation by the Dayton Police Department, Mrs. Quiroz conducted her own investigation and notified City of Dayton officials about the faulty investigation conducted by Dayton Police Department.

163.   Due to the lack of investigation by the Dayton Police Department, Mrs. Quiroz hired Wayne Dolcefino Consulting to investigate the wrongdoing by Dayton Police Department personnel.  The City of Dayton finally stated that the body camera recording of all police personnel that were involved in the crash investigation had been deleted.

164.   On or about November 19th,  2021. Wayne Dolcefino held a press conference in front of the Dayton Police Department and demanded City of Dayton officials hire an outside Independent Investigator.

165.   However, by this time, The City Manager Theo Melancon, Captain Coleman and Chief Vine had resigned or retired and were gainfully employed elsewhere.

166.   The outside investigator Jesse Prado's findings were significant, noting the rampant neglect and deliberate indifference  on the part of the Dayton Police officers. As a result:

167.   Dayton Police Department Chief Robert Vine was found in violation of "Failure to Supervise."

168.   Dayton Police Lieutenant Terri Hughes was terminated for Dereliction of Duty.

169.   Dayton Police Department Sergeant Kristen Seibert was found to be in violation for failure to inventory the vehicle.

170.   In January of 2022, two years after the crash, Dayton Detective Dale conducted an investigation, and a felony warrant was issued for Morgan White.

171.   Because Morgan was a juvenile at the time of the crash, the case was assigned to the Liberty County Attorney's office.

172.   When Morgan turned eighteen, she left the jurisdiction of the County Attorney's office, and there is nothing they can do with the case unless some new evidence is presented prior to Morgan's eighteenth birthday.

173.   Mr. Poston admitted that he and his office failed to meet their legal due diligence, leaving Madelyn with few options for justice.

174.   Furthermore, he has evidence that was unknown prior to Morgan's eighteenth birthday, and was submitted after she turned eighteen, but has made it very clear that he will not submit or release this new evidence.

## IV. CLAIMS

175.   Plaintiff incorporates herein the facts as set forth herein. All prerequisites for filing suit have been satisfied that Defendants owed a duty to provide her adequate medical care.

176.   After Madelyn was injured from the collision, she was bleeding from her face, crying, moaning, groaning from pain, and in obvious and critical need of

emergency medical care and treatment. The ignoring and denying of medical care pose an objective and subjective substantial risk of harm to Madelyn.

177.   However, rather than treating her  immediately, calling for life flight, medical personnel or EMS, or transporting her to a hospital to treat her injuries that resulted from the trauma from the  excessive speed and vehicle collision the defendant's.

178.   While acting under the color of law, intentionally failed as officers stood by and allowed the officer to engage in the lack of treatment.

179.   The officers entered the back seat where Madelyn was located, but did not provide life-saving measures, timely summon medical care, or permit medical personnel to treat Madelyn Quiroz.

180.   The denial and delay of medical care to Madelyn Quiroz caused Madelyn Quiroz extreme physical and emotional pain and suffering and was a contributing cause of Madelyn Quiroz severe injuries.

181.   The denial and delay of medical care by the paramedics and officers deprived Madelyn Quiroz of the right to be secure in her person against unreasonable searches and seizures guaranteed to Madelyn Quiroz under the Fourth Amendment to the United States Constitution and as  applied to state actors by the Fourteenth Amendment.

182.   Madelyn Quiroz was frightened, suffered conscious pain and suffering, great physical pain and emotional distress up to the time of the vehicle collision, and also suffered the loss of enjoyment of life, loss of quality of life, and loss of earning capacity.

183.   The Dayton Police Command staff and officers  knew that failure to provide timely medical treatment to Madelyn Quiroz could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing Madelyn Quiroz's great bodily harm.

184.   The conduct of the Dayton Police Command staff, officers and defendants was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Madelyn Quiroz and therefore warrants the imposition of exemplary and punitive damages as to the defendants. The defendants failed to render immediate medical care to Madelyn Quiroz after the vehicular assault.

185.   The misconduct described in this claim was objectively unreasonable and was undertaken intentionally with deliberate indifference or willful indifference to Madelyn Quiroz's constitutional rights.

186.   As a result of their misconduct, the Dayton Police Command staff, officers and  defendants are liable for Madelyn Quiroz's injuries, either because they were integral participants in the denial or delay of medical care or failed to intervene to prevent these violations.

187.   Defendants had common-law and statutory duties to use ordinary care in the operation of his and her vehicle. They negligently breached those duties and that negligence proximately caused Plaintiff's injuries and damages. Specifically, Defendants were negligent in the following particulars:

   a.  Failing to keep a proper lookout;

   b.  Racing,

   c.  Failing to control the speed;

   d.  Failing to yield right of way;

   e.  Failed to maintain a single marked lane

   f.  Proceeding at a high rate of speed, racing on the opposite lane against traffic.

   g.  Failing to timely apply brakes so as to avoid collision

   h.  In all things failing to act as a reasonable person using ordinary care in the same or similar circumstances.

**Delay in Medical Care under 42 USC 1983 and Medical Negligence – Chapter 74 Texas Healthcare Liability Act.**

188.   Plaintiff incorporates herein the facts as set forth herein. Accordingly, all perquisites for filing suit have been satisfied that Defendant medical providers,

Emergency Medical Service owed Madelyn a duty to provide her adequate medical care.

189.  Defendant Medical Providers, delayed attending to Madelyn's serious medical needs after the need was obvious. They waited over nearly 30 minutes and left her without care after arriving on the scene.

190.  Defendant Medical Providers, breached their duty of care and deviated from the standard of care for healthcare medical Emergency Medical Service, police and medical providers by:

      a.  failing to assess Madelyn Marina Quiroz's complaints of severe and excruciating pain, and visible injuries;

      b.  failing to allow her to be immediately transported to the hospital prior to or immediately after the accident;

      c.  failing to provide adequate medical care;

      d.  failing to transport Madelyn Marina Quiroz to a hospital after becoming aware that Madelyn Marina Quiroz was suffering from serious medical needs;

191.  Finally, they breached their duty to medically monitor *Madelyn Marina Quiroz* when she was involved in the collision.

192.  As a result, this breach of care. Denial of medical care, delay in medical care, and refusal to life flight, transport to a hospital was a proximate cause of

Madelyn Marina Quiroz's pain and suffering, and ultimately her catastrophic injuries;

193.   Defendants failed to recommend that Madelyn Marina Quiroz be transported to a hospital once he learned *Madelyn Marina Quiroz* condition and was having pain that could not be addressed immediately. Madelyn Marina Quiroz suffered damages.

## STRICT PRODUCT LIABILITY, DTPA VIOLATIONS, AND NEGLIGENCE CLAIMS AGAINST NISSAN AUTO

194.   NISSAN North America a.k.a. NISSAN Motor Corporation ("Nissan" herein) failed Madelyn Quiroz by producing and manufacturing a vehicle with safety hazards. Madelyn Quiroz was deprived of proper safety measures.

195.   Public complaints for Nissan Vehicles are noted with brake, seatbelt and airbag defects. According to the driver, the brakes failed. The back seat airbags didn't deploy, leaving Madelyn with no safety protection, causing catastrophic injuries.

196.   Plaintiffs incorporates the above facts by reference, at the time of the crash, Madelyn was a passenger in the vehicle manufactured by Nissan and suffered severe bodily injury leaving her paralyzed from the waist down Nissan knew that a defect of the airbags were present.

197.  It failed to recall or require a recall to repair the vehicle. Madelyn's injuries were a result of the failure of the airbag deployment from the Nissan she was riding in as a back seat passenger. Other passengers were in the front cabin but neither suffered severe bodily injury to the extent that Madelyn did.

198.  Nissan was a "Manufacturer" of the vehicle as defined in Texas Civil Practice & Remedies Code§ 82.001(4).

199.  The vehicle and its related equipment were designed, manufactured, constructed, and/or distributed by and through its agents and/or representatives of Defendants, Nissan was regularly engaged in the business of supplying or placing products, like the product in question, Nissan, in the stream of commerce for use by the consuming public, including

## **STRICT PRODUCT LIABILITY, DTPA VIOLATIONS, AND NEGLIGENCE CLAIMS AGAINST NISSAN AUTO**

200.   NISSAN North America a.k.a. NISSAN Motor Corporation ("Nissan" herein) failed Madelyn Quiroz by producing and manufacturing a vehicle with safety hazards. Madelyn Quiroz was deprived of proper safety measures.

201.  Public complaints for Nissan Vehicles are noted with brake, seatbelt and airbag defects.  According to the driver, the brakes failed.The back seat airbags

didn't deploy, leaving Madelyn with no safety protection, causing catastrophic injuries.

202.  Plaintiffs incorporates the above facts by reference, at the time of the accident, Madelyn was a passenger in the 2014 Nissan Maxima, manufactured by, Nissan and suffered severe bodily injury leaving her paralyzed from the chest down. Her injuries were a result of the failure of the airbag deployment from the Nissan she was riding in as a back seat passenger.

203.  Other passengers were in the front cabin but neither suffered severe bodily injury to the extent that Madelyn did. The airbag recall for this vehicle was issued after the collision occurred, on May 27, 2015.

204.  Airbags issues top the list for common problems with 2014 Nissan Maximas although there were no recalls for airbags.

205.  The 2014 Nissan Maxima at issue in this suit was manufactured, marketed, and distributed by Nissan was a "Manufacturer" of the vehicle as defined in Texas Civil Practice &Remedies Code§ 82.001(4).

206.  The vehicle and its related equipment were designed, manufactured, constructed, and/or distributed by and through its agents and/or representatives of Defendants, Nissan, was regularly engaged in the business of supplying or placing products, like the product in question, 2014 Nissan Maxima, in the

stream of commerce for use by the consuming public, including Madelyn, a foreseeable and intended beneficiary.

207. Further, such conduct was solely for commercial purposes. The vehicle in question and its parts remained unchanged from the time they were originally manufactured, distributed and sold by Defendant until they reached the driver of the Nissan's and ultimately resulted in Madelyn's injuries.

208. The Nissan was defective and in an unreasonably dangerous condition when it was placed into the stream of commerce by Defendants and remained defective and unreasonably dangerous at all times thereafter until May 27, 2015.

209. There was a safer alternative design available to the defendants. Specifically, there were alternative designs that, in reasonable probability, would have prevented or significantly reduced the risk of injury to Madelyn.

210. The safer alternative designs were economically and technologically feasible at the time the product left the control of the Defendant by the application of existing or reasonably achievable scientific knowledge.

211. At the time the vehicle was placed into the stream of commerce, it was, or should have been, reasonably expected and foreseeable that persons such as Madelyn would use the vehicle in the manner and application in which it was being used at the time Madelyn sustained her severe injuries.

212. By way of example and without limitation, the product in question was unreasonably, dangerously defective in the following ways: it was not crashworthy and reasonably fit for clearly foreseeable collisions.

213. At the time the vehicle in question left control of the Defendant, it was defective and unreasonably dangerous in that it was not adequately designed, manufactured, or marketed to minimize the risk of injury to occupants. The front driver's-side frontal airbag was defectively designed, manufactured and/ or marketed in that the airbag failed to deploy without particles, and metal fragments rocketing at the passenger causing his burns, at the time of impact in the collision made the basis of this lawsuit;

214. Plaintiff incorporates the above facts by reference to damages sought. Violation of Texas Business & Commerce Code section 27.01, which is the basis of this suit, with actual awareness of the falsity of defendant, Nissan, representation or promise, which entitles plaintiff to exemplary damages under section 27.01(c).

215. Actual awareness of the falsity of the representation or promise made by Nissan, failure to disclose the falsity to plaintiff, and benefit from the falsity, which entitles plaintiff to exemplary damages under Texas Business & Commerce Code section 27.01(d).

216.   Madelyn's injury resulted from, Nissan's, gross negligence, and malice, which, under Texas Practice and Remedies Code/Texas Rule of Civil Procedures, entitles plaintiff to exemplary damages as authorized by Texas Civil Practice & Remedies Code section 41.003(a).

## NEGLIGENCE CLAIMS AGAINST UNION PACIFIC RAILROAD

217.   While Ms. Marina Quiroz conducted the investigation, in reviewing the audio and visual of the Dayton Police  dash camera video. The  Dayton Police Department and dispatch stated that they were in contact with Union Pacific Railroad. The Union Pacific Railroad company was notified to stop any trains and also, that a vehicle left the roadway and crashed on their property. According to Sergeant K. Seibert.

218.   By policy and procedure, the Union Pacific Railroad are required to check for damages to the railroad property and equipment.  But, in this case, for some unknown reason, there was no report.  Union Pacific Railroad, they stated they could not locate an initial, supplemental report or camera footage from their files.

219.   According to the Dayton Police Department, there is an unidentified white male who they claim was either Morgan's father or a Railroad employee.

Although Morgan's step father does work for Union Pacific, he is on scene in civilian clothes comforting Morgan.

220.  The unidentified white male is seen entering the active crime scene wearing a blue shirt, baseball cap, blue jeans with  radio by his hip, a camera and appears he is taking photos of the vehicle and is seen removing property and evidence from the driver's floorboard contaminating the what should have been designated as a crime scene.  He then tlaked to Sergeant K. Seibert.  Yet, there is no record of this unidentified male or his actions on any report.

## TOLLING

221.  Tolling of the statute of limitations is required. Plaintiffs seek to plead any applicable tolling provisions against any defendant that might assert and are required to negate in an effort to a bar claims to suit based on limitations since full information involving MADELYN MARINA QUIROZ's injuries and damages are being withheld relating to the individuals involved, and additional details. Plaintiffs seek to plead any applicable tolling provisions, including under the discovery rule, against any defendant that might assert a bar to suit based on limitations.

## PRESERVATION OF EVIDENCE/SPOLIATION NOTICE

222.  Defendants received a letter of preservation requesting and demanding that Defendants preserve and maintain all evidence pertaining to any claim or

defense related to the  incident made the basis of this lawsuit or the damages resulting therefrom. It warned failure to maintain such items shall constitute a "spoliation" of the evidence.

## DAMAGES

223.  As a result of her bodily injuries, which were proximately caused by Defendant's negligence, gross negligence, indifference to the serious medical needs of Plaintiff.  Plaintiff is entitled to reasonable and proper compensation for the following legal damages:

224.  Past, present and future medical expenses;

    a.  Past, present and future physical pain and mental anguish;

    b.  Past, present and future physical impairment;

    c.  Past, present and future disfigurement;

    d.  Past, present and future lost wage-earning capacity;

    e.  Disfigurement;

    f.  Past, present and future out-of-pocket economic losses;

    g.  Plaintiff's reasonable and necessary attorney's fees under 1988;

    h.  Cost of court;

    i.  Pre-judgment and post-judgment interest at the highest rates allowable by law;

j.  For such other and further relief, both general and special, at law and in equity, to which Plaintiff may show himself entitled.

225.  Plaintiff seeks actual damages and punitive damages in an amount within the jurisdictional limits of this Court. More specifically, Plaintiff seeks monetary relief of over $1,000,000,000.00.

226.  Plaintiffs and her mother suffered from pecuniary loss as a result of the injuries to  Madelyn and Marina Quiroz and mental anguish as a result of the catastrophic injuries.

227.  Medical providers and officers listed above were aware of the foreseeable risk of depriving Madelyn of the required and/or  requested medical care. They nonetheless deprived Madelyn, and she was injured due to this deprivation, inadequate medical care, and delay in providing medical care. She essentially was left to die.

228.  The conduct of the medical providers was grossly negligent. Rather than treating Madelyn immediately or calling for life flight, medical personnel or Emergency Medical Services to treat her serious bodily injuries that resulted from the collision, Defendants prioritized and triaged the less injured person. The Defendants exacerbated the injuries by denying her medical care.

229.  Plaintiff incorporates herein the facts as set forth herein. Accordingly, all prerequisites for filing suit have been satisfied that Dayton Police Command

staff, officers and Emergency Medical Service providers engaged in wrongful conduct by denying and delaying medical care.

230.  Defendants, unknown medical providers and officers trained and supervised by Dayton Police and Fire acting under color of law when over an hour and ½ deprived Madelyn of medical care, causing her catastrophic injuries and damages. Additionally, the officers acted with deliberate indifference to the rights of Madelyn. Because of Defendants, unknown and the above identified Dayton Police Command staff, Officers and Emergency Medical Service provider's action of denying her life flight, it violated Madelyns's constitutional rights, including but not limited to those under the Fourth, Eighth and Fourteenth Amendments of the United States Constitution.

231.  The misconduct described in this claim denying her medical  was objectively unreasonable and undertaken with willfulness and reckless indifference to the rights of Madelyn.

### *Punitive Damages*

232.  Plaintiffs request punitive damages against each individually-named defendant. Exemplary damages based on the conduct of refusing to discourage the summoning of emergency services for Madelyn  Marina Quiroz and allowing Madelyn  Marina Quiroz to humiliating injuries and damages without regard to her serious medical needs, while at the accident scene and under the care of the

Emergency Medical Service providers and police, medical personnel, emergency medical technicians, that was outrageous, malicious, and morally culpable.

233.   Madelyn Marina Quiroz's injuries and damage resulted from the joint and several acts and omissions of Defendants for which Plaintiffs seek punitive and exemplary damages against each individual Defendant (as allowed by law) in an amount appropriate to punish each individual Defendant, and deter others from engaging in similar conduct;

234.   Award punitive damages against Defendants in an amount to be shown at trial;

235.   These egregious, actions that shock the conscience hereby entitle Plaintiffs to punitive/exemplary damages;

### *Actual Damages*

236.   Compensatory general damages against each Defendant, jointly and severally, in the amount proven at trial.

237.   As wrongful injuries and damages, Plaintiffs seeks actual damages, both general and special, for the loss of the use of her left arm and both legs, Madelyn Marina Quiroz, for the following specific elements of damages:

238.   Pecuniary loss resulting from the injuries and damages of Madelyn Marina Quiroz including, but not limited to, the care, maintenance, relationship, support, services, education, advice, counsel, and reasonable contributions of a pecuniary

value, would have received from Madelyn Marina Quiroz, had she not been deprived as a Victim of Crime to receive benefits from Crime Victims Compensation within the first two years of the said collision.

239.   Termination of the Family Relationship: The positive benefits flowing from the love, support, companionship, and society that Madelyn Marina Quiroz And Marina Quiroz, would in reasonable probability, have received from Madelyn Marina Quiroz had she not been deprived as a Victim of Crime to receive benefits Crime Victims Compensation within the first two years of the incident.

### Pain and Suffering

240.   Physical pain and suffering sustained by Madelyn Marina Quiroz from the time of the collision until present;

241.   Reasonable and necessary medical expenses.

242.   Reasonable and necessary medical expenses for Madelyn Marina Quiroz from the time of the collision until the present.

243.   Attorney's Fees.

244.   Plaintiffs are entitled to recover attorney's fees and costs under 42 U.S. C. § 1983, 1981 and 1988, including reasonable and necessary attorney's fees incurred by or on behalf of Plaintiffs.

### *Mental Anguish*

245.  Mental anguish was suffered by Madelyn Marina Quiroz during the collision. Mental anguish sustained by Madelyn Marina Quiroz from the time of the incident until present; Mental anguish suffered by Madelyn Marina Quiroz mother after almost two years of not being provided complete and thorough investigation.

246.  Mental Anguish suffered by her mother and family as a result of her injuries and damages of Madelyn Marina Quiroz, including, but not limited to, the emotional pain, torment, and suffering that Plaintiff would, in reasonable probability, experience from the injuries and damages of Madelyn Marina Quiroz.

### *Physical Impairment and Disfigurement*

247.  Physical Impairment was suffered by Madelyn Marina Quiroz while in the motor vehicle collision. Physical Impairment was suffered by Madelyn Marina Quiroz from the time of the incident until present.

### *Compensatory Special Damages*

248.  Including, but not limited to compensatory general damages against each Defendant, jointly and severally, in the amount proven at trial.

### *Medical expenses*

249.   Plaintiffs seek reasonable and necessary medical expenses for Madelyn Marina Quiroz from the time of the motor vehicle collision until present; and future Reasonable and necessary medical expenses.

### *Attorney's Fees*

250.   Plaintiffs are entitled to recover attorney's fees and costs under 42 U.S. C. §1983 and 1988 including reasonable and necessary attorney's fees incurred by or on behalf of Plaintiffs Equitable Relief.

### *Additional Damages*

251.   Plaintiffs seek to recover all court costs, fees, expenses, and expert fees. Pre and post-judgment interest as permitted by law; and such other relief, including injunctive and/or declaratory relief, as the court may deem proper.

### *Equitable relief*

252.   Equitable relief, including, without limitation, that City of Dayton, Texas, Dayton Police be made to apologize and to promulgate, adopt, train, maintain and enforce appropriate policies to prevent future instances of the type of misconduct described herein; Such other relief, including injunctive and declaratory relief, as the court may deem proper.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, Madelyn Quiroz respectfully pray that Defendants be summoned to appear and answer herein and that upon a final hearing of this cause, that judgment is entered for the Plaintiffs and against Defendants, both jointly and severally, for all damages requested herein, together with prejudgment and post-judgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which Plaintiffs may be entitled at law or in equity. Punish each Defendant, and deter others from engaging in similar conduct;

Plaintiffs assert that the injuries and damages of Madelyn Marina Quiroz was the result of government actors, individually and collectively caused the injuries and damages and harm suffered was the result of Defendants' conduct motivated by evil motive or intent or done recklessly or with callous deliberate indifference to the federally protected rights of Madelyn Marina Quiroz, and hereby entitle Plaintiffs to punitive and exemplary damages.

Equitable relief, including, without limitation, that Defendants be made to apologize and to promulgate, adopt, train, maintain and enforce appropriate policies to prevent future instances of the type of misconduct described herein; Such other relief, including injunctive and declaratory relief, as the court may deem proper.

X.

## PRAYER

Plaintiff(s) pray that they  have judgment against Defendant(s) jointly and severally, for actual damages shown and proved at trial, for prejudgment and post-judgment interest, for costs of court, and for all other relief, legal and equitable, to which he is entitled.

Respectfully submitted,

By: *Madelyn Quiroz*

Madelyn Marina Quiroz

10 Sherwood Street, Dayton, Tx 77535

maddiiquiroz@icloud.com FAX: 1-832-218-4322

By: *Marina N. Hernandez Quiroz*

Marina Naomi Hernandez Quiroz

10 Sherwood Street, Dayton, Tx 77535

marinaquiroz@att.net  FAX:1-832-218-4322

Plaintiff(s) pray that they have judgment against Defendant(s) jointly and severally, for actual damages shown and proved at trial, for prejudgment and post-judgment interest, for costs of court, and for all other relief, legal and equitable, to which he is entitled.

Respectfully submitted,

By: _____

Marina Naomi Hernandez Quiroz, individually

and as Attorney in Fact for Madelyn Quiroz

10 Sherwood Street, Dayton, Tx 77535

marinaquiroz@att.net

FAX:1-832-218-4322