IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| MADELYN MARINA QUIROZ; MARINA NAOMI HERNANDEZ QUIROZ,<br><br>            Plaintiffs,<br><br>vs.<br><br>EDUARDO HERNANDEZ;  CITY OF DAYTON; THEO MELANCON, CITY MANAGER; FNU DICKENSON, CITY MANAGER; ROBERT VINE, CHIEF; JOHN D. COLEMAN, DAYTON POLICE CAPTAIN; TERRI HUGHES, CID LT.; CAROLINE WEDZECK; KRISTEN SEIBERT;  CITY OF DAYTON FIRE DEPARTMENT; MURPHY GREEN; JENNIFER BERGMAN HARKNESS, LIBERTY COUNTY DISTRICT ATTORNEY; MATTHEW POSTON, LIBERTY COUNTY ATTORNEY; MATTHEW SALDANA;  CITY OF LIBERTY TEXAS; KATELYN GRIMES; ALLEGIANCE MOBILE HEALTH MEDICAL SERVICE; STEVE SMITH; RAMJI LAW GROUP; JAMEY WAYNE BICE; STEPHANIE LEE BLUM BICE; MORGAN SKYE WHITE; UNION PACIFIC RAILROAD COMPANY; ADAM RAMJI,<br><br>            Defendants. | NO. 1:23-CV-00273-MAC-ZJH |

## REPORT AND RECOMMENDATION GRANTING MOTIONS TO DISMISS

    This civil rights case is assigned to the Honorable Marcia A. Crone, United States District Judge.  On July 17, 2023, Judge Crone referred this case to the undersigned United States Magistrate Judge for pretrial management.  Doc. No. 1.

Pending before the court are four motions to dismiss:

(1) Defendants Liberty County District Attorney Jennifer Bergman Harkness, Liberty County Attorney Matthew Poston, and Liberty County Assistant Attorney Matthew Saldana's *Motion to Dismiss Plaintiffs' Second Corrected Amended Complaint* (Doc. No. 20);

(2) Defendants Allegiance Mobile Health Medical Service and Steve Smith's *Motion to Dismiss Plaintiffs' Second Corrected Amended Complaint* (Doc. No. 21);

(3) City of Liberty Defendants' *Motion to Dismiss Plaintiffs' Second Amended Complaint* (Doc. No. 23); and

(4) City of Dayton Defendants' *Corrected Motion to Dismiss Plaintiffs' Corrected Second Amended Complaint* (Doc. No. 24).

At the outset, the undersigned notes that Plaintiffs' *Corrected Second Amended Complaint* (Doc. No. 18) is riddled with pleading deficiencies, difficult to decipher throughout, and replete with vague, conclusory allegations. Nonetheless, it appears that Plaintiffs generally assert various constitutional claims pursuant to 42 U.S.C. § 1983. Plaintiffs' claims arise from a serious car accident that occurred in Dayton, Texas that left Plaintiff Madelyn Quiroz as paraplegic. Plaintiff Marina Naomi Hernandez Quiroz is Madelyn Quiroz's mother. The instant motions to dismiss involve Plaintiffs' claims against local government defendants and a private ambulance company that responded to the accident. After careful review of the filings and applicable law, the undersigned recommends granting all four motions to dismiss.

## I. Factual and Procedural Background

This case arises from a serious car accident that occurred in Dayton, Texas on January 23, 2020. Doc. No. 18 at 4. Plaintiff Madelyn Quiroz, then a 16-year-old, was the backseat passenger of a car driven by Defendant Morgan White. *Id.* at 3. On the afternoon in question, White was driving fast—between 86 and 96 miles per hour on a roadway with a speed limit of 30 miles per hour—to race with Defendant Eduardo Hernandez, who was driving a separate automobile. *Id.*

White ultimately lost control of her vehicle and the vehicle was launched airborne, traveling approximately 10 to 15 feet over a deep ditch and landing on railroad tracks. *Id.* Quiroz suffered life threatening injuries due to the crash, including internal bleeding, a partially collapsed lung, head trauma, a fractured nose, a bleeding spleen, a broken arm, a damaged radial nerve, broken ribs, a broken back, and a serious spinal cord injury. *Id.* As a result of the collision, Quiroz is now a paraplegic. *Id.* at 34, ¶ 149. Quiroz turned 18 years old on July 18, 2021. *Id.* at 4.

The instant motions to dismiss address Plaintiffs' claims against various local government and private ambulance company defendants. These claims relate to the medical treatment of Madelyn Quiroz at the scene of the accident and the subsequent investigation and evaluation of the accident by local authorities.

Defendant Harkness is the Liberty County District Attorney, Defendant Poston is a Liberty County Attorney, and Defendant Saldana is an Assistant Liberty County Attorney (collectively, "the Liberty County Defendants"). Doc. No. 18 at 18–23. All three are sued in their official capacities. *Id.* According to the facts alleged in the operative complaint, Defendant Harkness refused Marina Quiroz's attempts to meet with her for over two years, would not pursue charges against Defendant Hughes for apparently deleting body camera footage, and failed to investigate misconduct. *Id.* at 18, ¶ 55. Additionally, Plaintiffs allege that Defendant Poston failed to ensure that Dayton Police Department followed standard practices during the investigation of the incident and failed to submit allegedly new evidence that Defendant White was "getting high in the school restroom" minutes before getting behind the wheel prior to the accident. *Id.* at 19, ¶¶ 60–72. Plaintiffs allege that Defendant Saldana failed to submit the same alleged new evidence. *Id.* at 23.

Defendant Allegiance Mobile Health ("Allegiance") is an emergency medical service provider and Defendant Steve Smith was a paramedic employed by Allegiance (collectively, "the

Allegiance Defendants"). *Id.* at 25, ¶¶ 106–107. Defendant Smith was one of the paramedics who responded to the accident. *Id.* According to Plaintiffs, an argument occurred between Defendant Smith and Defendant Murphy Green, the City of Dayton Fire Chief, at the scene of the accident. *Id.*, ¶ 108. The argument concerned whether to contact Life Flight, a helicopter emergency medical transport service, in providing emergency treatment to Quiroz. *Id.*, ¶¶ 108, 138. This contributed to a 90-minute delay in activating Level 1 Trauma protocols. *Id.* Additionally, Plaintiffs allege that Defendant Smith failed to properly assess Quiroz's injuries, which also delayed her treatment and transport to a Level 1 Trauma Facility. *Id.* at 27, ¶ 118. Plaintiffs' allegations against Defendant Murphy Green, former Chief of the Dayton Volunteer Fire Department, are identical to the allegations against Defendant Smith. *Id.* at 17. Plaintiffs did not file suit against the Allegiance Defendants until October 12, 2023, when they filed their *First Amended Complaint* (Doc. No. 4).

Plaintiffs allege that Defendant Katelyn Grimes, a paramedic employed by Defendant City of Liberty (collectively, "the Liberty Defendants") prevented Flavio Quiroz, Madelyn Quiroz's father, from accessing her at the scene of the accident. *Id.* at 25, ¶ 102. Defendant Grimes is sued in her official capacity.

Finally, Plaintiffs sue a variety of defendants employed by the City of Dayton. All are sued in their official capacities. *Id.*, ¶¶ 13, 17, 20, 31, 39, 47, 51. Regarding the City of Dayton itself, Plaintiffs offer a litany of allegations: that the City was untruthful to the Texas Attorney General's office, denied proper hold of the wrecked automobile, failed to conduct a complete preliminary scene investigation, failed to procure medical records showing Defendant White's intoxication, failed to collect witness statements after the accident, suppressed the completion of a criminal investigation into Defendant White, deceived Marina Quiroz about the investigation, and failed to disclose which officer was assigned to investigate the accident. *Id.* at 4–6, ¶¶ 4–12.

Regarding Defendant Wadzeck, the former Mayor of Dayton, Plaintiffs allege that Wadzeck allowed her staff members to "fail the public" by disregarding and violating certain policies and procedures. *Id.* at 6, ⁋ 14. Plaintiffs also allege that Wadzeck was involved in depriving Madelyn Quiroz of Crime Victim Compensation benefits. *Id.* Plaintiffs assert identical allegations against Defendant Theo Melancon, the former Dayton City Manager, and Defendant John Coleman, former police captain. *Id.* at 7, ⁋ 17.

Plaintiffs also assert identical allegations against Defendant Robert Vine, former Deputy City Manager and Chief of Police. *Id.* at 8, ⁋ 22. Additionally, Plaintiffs allege that Defendant Vine failed to properly supervise his staff, failed to follow up relevant leads related to the case, and failed to interview the other occupants of the car in which Quiroz was traveling during the accident. *Id.* at 9. Plaintiffs further allege that Defendant Vine harassed and intimidated the Quiroz family by instructing law enforcement personnel to pass by and around the Quiroz residence in marked patrol units. *Id.* at 10, ⁋ 28. Finally, Plaintiffs allege that Defendant Vine allowed various body camera footage to be deleted. *Id.*, ⁋ 29.

Regarding Defendant Terri Hughes, a former Criminal Investigation Division Lieutenant employed by the Dayton Police Department, Plaintiffs allege that Hughes knowingly submitted an incomplete intake case file to Defendant Poston's office. *Id.* at 13, ⁋ 40. Specifically, Defendant Hughes never interviewed Defendant White, other passengers in the vehicle, witnesses from the crash scene, or witnesses from the school. *Id.*

Regarding Defendant Kristen Seibert, Dayton Police Sergeant, Plaintiffs allege that Seibert was untruthful about photos of the vehicle and the accident scene, falsified witness statements, obstructed justice, and that Seibert's body camera footage during the incident was deleted. *Id.* at 15–16.

5

Plaintiffs filed their original *Complaint* on July 17, 2023. Doc. No. 1. Plaintiffs subsequently filed an *Amended Complaint* on October 12, 2023, which added several new defendants.[1] Doc. No. 4. Plaintiffs ultimately filed their *Corrected Second Amended Complaint* on November 21, 2023. Doc. No. 18. The Liberty County Defendants filed their *Motion to Dismiss* on December 1, 2023. Doc. No. 20. The Allegiance Defendants, Dayton Defendants, and City of Liberty Defendants filed their respective *Motions to Dismiss* (Doc. Nos. 21, 23, 25) on December 5, 2023. On December 15, 2023, Plaintiffs filed a *Response* to the Liberty County Defendants' *Motion to Dismiss*. Doc. No. 25. On December 19, 2023, Plaintiffs filed a *Response* to the other three *Motions to Dismiss*. Doc. No. 27. The Liberty County Defendants, Allegiance Defendants, Dayton Defendants, and City of Liberty Defendants all filed *Replies*. Doc. Nos. 30, 33, 38, 39.

Defendants Ramji Law Group and Adam Ramji, Jamey Wayne Bice, Stephanie Lee Blum Bice, Morgan Skye White, Union Pacific Railroad Company, and Eduardo Hernandez have not answered or otherwise responded to Plaintiffs' *Corrected Second Amended Complaint* (Doc. No. 18).

## II.    Legal Standards

### A.  Rule 12(b)(1) Motion to Dismiss

A motion to dismiss filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject-matter jurisdiction of a federal district court. *See* FED R. CIV. P. 12(b)(1). The court "must presume that a suit lies outside [its] limited jurisdiction, and the burden of

---

[1] The *First Amended Complaint* added Defendants Wadzeck, the City of Dayton Fire Department, Green, Harkness, Poston, Saldana, the City of Liberty, Grimes, Allegiance Mobile Health Medical Service, Smith, Ramji Law Group, Ramji, Jamey Wayne Bice, Stephanie Lee Blum Bice, White, Nissan North America, and Union Pacific Railroad Company. Doc. No. 4 at 1. These defendants are also named in the *Second Corrected Amended Complaint* (Doc. No. 18), which is the operative complaint.

establishing federal jurisdiction rests on the party seeking the federal forum." *Gonzalez v. Limon*, 926 F.3d 186, 188 (5th Cir. 2019). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Walmart, Inc. v. U.S. Department of Justice*, 21 F.4th 300, 307 (5th Cir. 2021) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). A court must address a jurisdictional challenge before addressing a challenge on the merits under Rule 12(b)(6). *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

When ruling on a 12(b)(1) motion, a court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *In re S. Recycling, L.L.C.*, 982 F.3d 374, 379 (5th Cir. 2020). "[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle the plaintiff to relief." *Ramming*, 281 F.3d at 161.

### B. Rule 12(b)(6) Motion to Dismiss

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs must state enough facts to "nudge their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When assessing a motion to dismiss under this rule, the court must accept as true all

well-pleaded facts in the plaintiffs' complaint and view those facts in the light most favorable to the plaintiffs. *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023). However, "[c]onclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true." *Id.* (internal quotations omitted).

### III.      Liberty County Defendants' Motion to Dismiss

The Liberty County Defendants move to dismiss Plaintiffs' claims against them because the court lacks subject matter jurisdiction over Plaintiffs' claims. Doc. No. 20 at 8. Defendant Harkness is the District Attorney of Liberty County, and Defendants Poston and Saldana are Liberty County assistant attorneys. *Id.* at 3. The Liberty County defendants contend that they are entitled to absolute prosecutorial immunity from Plaintiffs' federal and state law claims against them in their individual capacities, and from Plaintiffs' state law claims against them in their official capacities. *Id.* at 8. Additionally, they contend that they are entitled to Eleventh Amendment immunity from Plaintiffs' federal law claims against them in their official capacities. *Id.* The undersigned agrees.

At the outset, the undersigned notes that Plaintiffs sue the Liberty County defendants in their official capacities. Doc. No. 18 at ¶¶ 54, 58, 82. The undersigned discerns no individual capacity claims. Additionally, it seems that Plaintiffs attempt to assert federal law claims, but it is unclear whether Plaintiffs assert state law claims as well. For the sake of thoroughness, the undersigned will assume that Plaintiffs attempt to assert claims under both federal and state law against the Liberty County defendants in their official capacities. To the extent Plaintiffs assert any claims at all against the Liberty County defendants in their individual capacities, such claims are vague, conclusory, and difficult to decipher. Despite the poor pleading of Plaintiffs' allegations

in the *Corrected Second Amended Complaint* (Doc. No. 18), the undersigned discerns several potential claims.

Plaintiffs allege that Harkness "discriminated" against Madelyn Quiroz and denied her equal protection and due process of law. Doc. No. 18 at 18, ¶¶ 54–55. It seems that these claims arise from Harkness' alleged refusal to pursue charges against former Dayton Police Lieutenant Terri Hughes related to Hughes' alleged faulty investigation of the underlying car accident. *Id.* Plaintiffs allege that Poston and Saldana "discriminated" against Madelyn Quiroz and deprived her of equal protection and due process of law. *Id.* at 19, ¶¶ 58–59, 82–83. These claims apparently arise from Poston and Saldana's alleged "[refusal] to pursue claims against White suspects on behalf of Hispanic females." *Id.* In sum, it appears there are three potential claims asserted against the Liberty County defendants in their official capacities: (1) some type of vague discrimination claim; (2) an equal protection claim; and (3) a due process claim.

The Liberty County Defendants are entitled to Eleventh Amendment immunity from all of Plaintiffs' claims brought against them in their official capacities. Plaintiffs' discrimination, equal protection, and due process claims against the Liberty County Defendants arise from the Defendants' alleged decisions not to file criminal charges against certain individuals. These decisions are unquestionably prosecutorial decisions that are entitled to the protection of Eleventh Amendment immunity. *See Quinn v. Roach*, 326 F. App'x 280, 292 (5th Cir. 2009) (granting Eleventh Amendment immunity to district attorneys and assistant district attorneys sued in their official capacities for claims relating to decisions about whether and when to bring charges); *see also Moreno v. Donna Indep. Sch. Dist.*, 589 F. App'x 677, 680 (5th Cir. 2014) (finding that the Eleventh Amendment shields district attorney from official-capacity liability). Accordingly,

Plaintiffs' claims against the Liberty County Defendants in their official capacities must be dismissed.

The undersigned discerns no federal or state law claims brought against the Liberty County Defendants in their individual capacities. However, to the extent any such claims might be alleged, the Liberty County Defendants are entitled to absolute immunity from them. It is well-settled in the Fifth Circuit "that district attorneys and assistant district attorneys in Texas are agents of the state when acting in their prosecutorial capacities." *Quinn*, 326 F. App'x at 292. As such, prosecutors are absolutely immune from liability with respect to actions taken by them while representing the government in judicial proceedings. *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976). Actions taken by prosecutors in preparing for the initiation of judicial proceedings or for trial and which occur during their role as an advocate for the government are entitled to the protections of absolute immunity. *Boyd v. Biggers*, 31 F.3d 279, 285 (5th Cir. 1994).

Plaintiffs' discrimination, equal protection, and due process claims against the Liberty County Defendants arise from the Defendants' alleged decisions not to file certain criminal charges. "The decision to file or not file criminal charges is protected by prosecutorial immunity." *Quinn*, 326 F. App'x at 292. Accordingly, the Liberty County Defendants are entitled to prosecutorial immunity from any of Plaintiffs' claims brought against them in their individual capacities under both federal and state law.

Plaintiffs fail to plead facts that defeat Eleventh Amendment immunity or absolute prosecutorial immunity, which warrants dismissal of their claims against the Liberty County Defendants. Accordingly, all of Plaintiffs' claims against the Liberty County Defendants should be dismissed.

## IV.     The Allegiance Defendants' Motion to Dismiss

Defendants Allegiance Mobile Health and Steve Smith (collectively, "the Allegiance Defendants") move to dismiss Plaintiffs' claims against them because (1) Plaintiffs' claims are barred by applicable statutes of limitation, (2) Plaintiffs fail to allege that the Allegiance Defendants are state actors, and (3) Plaintiffs have simply failed to state a plausible claim against them.  Doc. No. 21 at 1–2.  The undersigned finds that all of Plaintiffs' claims against the Allegiance Defendants are barred by the statute of limitations.

While Plaintiffs offer somewhat detailed factual allegations against the Allegiance Defendants regarding their response to the accident, the causes of action alleged are vague and conclusory.  Doc. No. 18 at 25–26.  The undersigned discerns several possible claims against the Allegiance Defendants: a vague claim for "discrimination," negligence, and violations of due process, equal protection, and the Fourth Amendment asserted pursuant to § 1983.  *Id.* Specifically, Plaintiffs allege that "Allegiance Mobile Health Emergency Medical Service discriminated against Madelyn Quiroz and denied Madelyn Quiroz life, liberty and property in the pursuit of happiness and he also denied Madelyn Quiroz equal protection of the law."  *Id.* at 25, ¶ 106.  Additionally, Plaintiffs allege "Allegiance negligently trained and hired Defendant Smith, and the other EMS workers L.F. Johnothon, Elizabeth Alvarez, and Katelyn Grimes."[2]  *Id.* at 26, ¶ 108.  Finally, Plaintiffs allege that "[a]fter Madelyn was severely injured causing the delay and denial of her medical care in violation of her fourth amendment rights as well as constituting medical negligence."  *Id.*, ¶ 110.

Under Texas law, the limitations period for a negligence action is two years.  TEX. CIV. PRAC. & REM. CODE § 16.003(a); *Ledford v. Keen*, 9 F.4th 335, 338 (5th Cir. 2021); *Schlumberger*

---

[2] The undersigned notes that L.F. Johnothon and Elizabeth Alvarez are not parties to this lawsuit and are not identified anywhere else in the operative complaint.  *See generally* Doc. No. 18.

*Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018). Once a defendant's wrongful conduct causes a legal injury, "the injured party's claims based on that wrongful conduct accrue—and the limitations period begins to run—even if (1) the claimant does not yet know that a legal injury has occurred, (2) the claimant has not yet experienced, or does not yet know the full extent of, the legal injury, (3) the claimant does not yet know the specific cause of the injury or the party responsible for it, (4) the wrongful conduct later causes additional legal injuries, or (5) the claimant has not yet sustained or cannot yet ascertain any or all of the damages resulting from the legal injuries." *Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 814 (Tex. 2021).

Regarding § 1983 claims, because no federal statute specifies a limitation period for § 1983 suits, federal law borrows the forum state's general personal injury limitation period. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Heilman v. City of Beaumont*, 638 F. App'x 363, 366 (5th Cir. 2016). In Texas, that statute of limitations period is two years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a); *see also Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002). In addition to the limitations period, courts apply the forum state's tolling principles. *Walker v. Epps*, 550 F.3d 407, 415 (5th Cir. 2008). Texas applies equitable tolling sparingly, looking to whether a plaintiff has diligently pursued his or her rights; litigants cannot use the doctrine "to avoid the consequences of their own negligence." *Hand v. Stevens Transp., Inc. Emp. Benefit Plan*, 83 S.W.3d 286, 293 (Tex. App.—Dallas 2002, no pet.).

Negligence and § 1983 claims have the same two-year limitations period, so the undersigned will analyze these claims together. The undersigned finds that Plaintiffs' negligence and § 1983 claims against the Allegiance Defendants are barred by the applicable statutes of limitation. The accident that forms the basis of this lawsuit occurred on January 23, 2020. Doc. No. 18 at 4, ⁋ 1. According to Plaintiffs, Madelyn Quiroz turned 18 on July 18, 2021. *Id.*

However, Plaintiffs did not file suit against the Allegiant Defendants until October 12, 2023, when they filed their *First Amended Complaint* (Doc. No. 4). The *First Amended Complaint* was filed more than three years after the accident and more than two years after Madelyn Quiroz turned 18. Accordingly, Plaintiffs' negligence and § 1983 claims against the Allegiance Defendants are barred by the statute of limitations.

Despite the clear applicability of the statute of limitations, Plaintiffs "seek to plead any applicable tolling provisions against any defendant that might assert [sic]." Doc. No. 18 at 51, ⁋ 237. Plaintiffs fail to demonstrate that the statute of limitations should be tolled. Under Texas law, there are two doctrines that may defer a claim's accrual date: (1) the discovery rule and (2) fraudulent concealment. *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015). The discovery rule is a "narrow exception to the legal injury rule that defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action." *Marcus & Millichap Real Est. Inv. Servs. of Nevada, Inc. v. Triex Texas Holdings, LLC*, 659 S.W.3d 456, 461 (Tex. 2023) (internal quotations omitted). The discovery rule applies "when the injury is by its nature inherently undiscoverable," which means "unlikely to be discovered within the prescribed limitations period despite due diligence." *Id.* Plaintiffs fail to allege any facts in their *Corrected Second Amended Complaint* (Doc. No. 18) showing that Madelyn Quiroz's injuries were inherently undiscoverable. Accordingly, the discovery rule is inapplicable here.

Under the doctrine of fraudulent concealment, "when a defendant has fraudulently concealed the facts forming the basis of the plaintiff's claim, limitations does not begin to run until the [plaintiff], using reasonable diligence, discovered or should have discovered the injury." *Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 817 (Tex. 2021).

Plaintiffs fail to allege any facts showing that the Allegiance Defendants fraudulently concealed facts related to Madelyn Quiroz's injuries.    Accordingly, fraudulent concealment is also inapplicable here.

In their *Response*, Plaintiffs contend that their claims against the Allegiance Defendants relate back to the original *Complaint* (Doc. No. 1) under TEX. CIV. PRAC. & REM. CODE § 16.068, and therefore, are not barred by the statute of limitations.    Doc. No. 27 at 8–10.    Specifically, Plaintiffs contend that the doctrines of misnomer and misidentification apply and toll the statute of limitations because "Plaintiff was not aware it was Allegiance, not City of Dayton, who was responsible for the emergency medical services." *Id.* at 10.    The Allegiance Defendants are entirely new parties named in Plaintiffs' *First Amended Complaint* (Doc. No. 4) that were not named in their original *Complaint* (Doc. No. 1).    The City of Dayton, who Plaintiffs contend is the misidentified/misnamed party, was a defendant in the original *Complaint* (Doc. No. 1) and is *still* a defendant in the *First Amended Complaint* (Doc. No. 4).    As explained below, the undersigned finds that neither misidentification nor misnomer apply here, and Plaintiffs' claims against the Allegiance Defendants do not relate back to the claims in their original *Complaint* (Doc. No. 1).

Whether an amended pleading in federal court relates back to a prior pleading is a procedural question that invokes FED. R. CIV. P. 15(c).    *Taylor v. Trevino*, 569 F. Supp. 3d 414, 430 (N.D. Tex. 2021).    Rule 15(c)(1)(A) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the law that provides the applicable statute of limitations allows relation back."    FED. R. CIV. P. 15(c)(1)(A).    Here, Texas law provides the applicable statutes of limitation for negligence and § 1983 claims.    Accordingly, the court must examine the relation back statute under Texas law, which provides that:

> [i]f a filed pleading relates to a cause of action, cross action, counterclaim, or
> defense that is not subject to a plea of limitation when the pleading is filed, a

subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

TEX. CIV. PRAC. & REM. CODE § 16.068.

The Fifth Circuit has construed Rule 15(c)(1)(A) to mean that a court should consider both Rule 15(c) and § 16.068, and "whichever is more forgiving and works to save the claim is the one that controls." *Taylor*, 569 F. Supp. 3d at 431 (citing *Schirle v. Sokudo USA, L.L.C.*, 484 F. App'x 893, 901–02 (5th Cir. 2012) (per curiam)).

Turning first to § 16.068, "[o]rdinarily, an amended pleading adding a new party does not relate back to the original pleading." *Univ. of Tex. Health Sci. Ctr. at San Antonio v. Bailey*, 332 S.W.3d 395, 400 (Tex. 2011); *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 121 (Tex. 2004).  In certain circumstances, a pleading involving misnomer or misidentification can relate back.  Misidentification "arises when two separate legal entities exist and a plaintiff mistakenly sues an entity with a name similar to that of the correct entity." *In re Greater Houston Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 325 (Tex. 2009).  However, "[e]quitable tolling may be available in a misidentification case only if there are two separate, but related, entities that use a similar trade name and the correct entity had notice of the suit and was not misled or disadvantaged by the mistake." *Levinson Alcoser Assocs., L.P. v. El Pistolon II, Ltd.*, 670 S.W.3d 622, 628 n.3 (Tex. 2023).  That is not the case here.  The Allegiance Defendants and the City of Dayton do not have similar names, and Plaintiffs have not shown that the Allegiance Defendants had notice of this suit when the original *Complaint* (Doc. No. 1) was filed.  Accordingly, the misidentification doctrine does not apply and the statute of limitations cannot be tolled on this basis.

Additionally, "[a] misnomer occurs when a party misnames itself or another party, but the correct parties are involved." *Houston Orthopaedic*, 295 S.W.3d at 325.  That is not the case here

either.  Allegiance Mobile Health, a private emergency medical transport company, is a wholly distinct entity from the City of Dayton, a municipality, and was never involved in this case prior to the filing of the *First Amended Complaint* (Doc. No. 4).  Accordingly, misnomer does not apply and the statute of limitations cannot be tolled on this basis.

Turning to FED. R. CIV. P. 15(c), Plaintiffs cannot establish that the statute of limitations should be tolled under the Federal Rules of Civil Procedure either.  "Rule 15(c) is meant to allow an amendment changing the name of a party to relate back to the original complaint *only if the change is the result of an error, such as a misnomer or misidentification.*"  *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 926 F. Supp. 2d 935, 947 (S.D. Tex. 2013) (citing *Miller v. Mancuso*, 388 F. App'x. 389, 391 (5th Cir. 2010)) (emphasis in original).  As discussed above, Plaintiffs have not established either a misnomer or misidentification of the Allegiance Defendants.  Rather, Plaintiffs simply allege that "Plaintiff was not aware it was Allegiance, not City of Dayton, who was responsible for the emergency medical services."  Doc. No. 27 at 9–10.  This is not enough to establish a misidentification or misnomer sufficient to invoke the relation back doctrine.  *See Ultraflo*, 926 F. Supp. 2d at 947 (stating that "[a] failure to name the correct defendant due to a lack of knowledge of the proper party is not a mistake and will not allow a plaintiff to avail itself of the relation back doctrine").

The undersigned concludes that Plaintiffs' negligence claims and constitutional claims asserted against the Allegiance Defendants under § 1983 are time barred by the applicable statutes of limitations.  Accordingly, all such claims against the Allegiance Defendants should be dismissed.

Finally, regarding Plaintiffs' conclusory assertion of a "discrimination" claim, this claim should be dismissed because Plaintiff fails to state a claim upon which relief can be granted.  To

survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. Plaintiffs state no facts at all showing that the Allegiance Defendants discriminated against her and fail to allege any specific cause of action for discrimination. "Conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true." *Allen*, 65 F.4th at 743. Accordingly, any "discrimination" claim against the Allegiance Defendants should be dismissed.

In sum, the undersigned recommends granting the Allegiance Defendants' instant *Motion to Dismiss* (Doc. No. 21).

## V.    Defendants City of Liberty, Texas and Katelyn Grimes' Motion to Dismiss

Defendants City of Liberty, Texas and its official Katelyn Grimes (collectively, "the Liberty Defendants") move to dismiss Plaintiffs' claims against them because Plaintiffs' claims (1) are barred by applicable statutes of limitation, (2) Plaintiffs fail to plead causes of action in support of their § 1983 claims, and (3) the Liberty Defendants are entitled to qualified immunity from suit. Doc. No. 23 at 3–4. As a threshold matter, the undersigned finds that Plaintiffs have abandoned all claims against the City of Liberty itself. Though the City of Liberty is named in the caption of the *Corrected Second Amended Complaint*, there are no cognizable causes of action pleaded against the city anywhere in the operative complaint. *See generally* Doc. No. 18. Accordingly, the Liberty Defendants' instant motion should be granted with respect to the City of Liberty on this basis.

As is par for the course with Plaintiffs' operative complaint, the allegations against Defendant Grimes are extremely sparse and conclusory. Plaintiffs allege that Defendant Grimes "discriminated against Madelyn Quiroz and denied Madelyn Quiroz life, liberty, and property in the pursuit of happiness and [she] also denied Madelyn Quiroz equal protection of the law." Doc.

No. 18 at 24–25, ⁋ 101. From this, the undersigned discerns a vague "discrimination" claim and violations of Madelyn Quiroz's due process and equal protection rights pursuant to § 1983.

The undersigned finds that all of Plaintiffs' § 1983 claims against Defendant Grimes are barred by the statute of limitations. As discussed above, the statute of limitations for § 1983 claims in Texas is two years. *See Hitt*, 301 F.3d at 246; TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a). Plaintiffs did not file suit against Defendant Grimes until October 12, 2023 when they filed their *First Amended Complaint*. Doc. No. 4 at 28, ⁋ 97. Defendant Grimes' name appears nowhere in the original *Complaint*. *See generally* Doc. No. 1. The *First Amended Complaint* was filed more than three years after the accident and more than two years after Madelyn Quiroz turned 18. Thus, Plaintiffs' § 1983 claims against Defendant Grimes are barred by the statute of limitations.

In their *Response*, Plaintiffs contend, in conclusory fashion, that the claims against Defendant Grimes in the operative complaint relate back to the original complaint. Doc. No. 27 at 13. Plaintiffs allege no facts, other than this conclusory assertion, that the claims against Grimes relate back to the original *Complaint* (Doc. No. 1). Accordingly, this argument is without merit.

Regarding any possible discrimination claim, this claim fails for the same reasons Plaintiffs' discrimination claim against the Allegiance Defendants fails: Plaintiffs state no facts at all showing that the Liberty Defendants discriminated against her and fail to allege any specific cause of action for discrimination. Plaintiffs fail to "state a claim to relief [for discrimination] that is plausible on its face." *Iqbal*, 556 U.S. at 678. Accordingly, any "discrimination" claim against the Allegiance Defendants should be dismissed. In sum, the undersigned recommends granting the Liberty Defendants' instant motion to dismiss (Doc. No. 23).

VI.    **City of Dayton Defendants' Motion to Dismiss**

Defendants City of Dayton, The City of Dayton Fire Department, Caroline Wadzeck, Theo Melancon, Robert Vine, John D. Coleman, Terri Hughes, Kristen Seibert, and Murphy Green (collectively, "the Dayton Defendants") move to dismiss Plaintiffs' claims against them for several reasons. Doc. No. 24 at 2–3. First, they contend that the claims against the City of Dayton Fire Department, Caroline Wadzeck, Kristen Seibert, and Murphy Green are barred by applicable statutes of limitation. *Id.* at 7. Second, they contend that the City of Dayton Fire Department should be dismissed because it is not a proper jural defendant. *Id.* at 8. Third, they contend that the claims against Defendants Wadzeck, Melancon, Vine, Coleman, Hughes, Seibert, and Green are duplicative of the claims against the City of Dayton, which warrants dismissal. *Id.* at 9. Finally, they contend that Plaintiffs fail to sufficiently plead facts supporting a *Monell* liability claim against Defendant City of Dayton. *Id.* at 9–10. The undersigned will consider each contention in turn.

A.  **Statutes of Limitation**

The undersigned discerns equal protection and due process claims asserted against Defendants City of Dayton Fire Department, Wadzeck, Seibert, and Green pursuant to § 1983. Doc. No. 18 at ¶¶ 14, 47, 51. Thus, the statute of limitation rules for § 1983 claims discussed above apply to these claims.

The undersigned finds that the limitations period under Texas law bars Plaintiffs' § 1983 claims against Defendants City of Dayton Fire Department, Wadzeck, and Green. Under Texas law, the statute of limitations for § 1983 claims is two years. *See Hitt*, 301 F.3d at 246; TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a). Plaintiffs did not file suit against Defendants City of Dayton Fire Department, Wadzeck, and Green until October 12, 2023, when they filed their *First*

19

*Amended Complaint*.  Doc. No. 4 at 28, ⁋ 97.  The *First Amended Complaint* was filed more than three years after the accident and more than two years after Madelyn Quiroz turned 18. Accordingly, Plaintiffs' § 1983 claims against Defendants City of Dayton Fire Department, Wadzeck, and Green are barred by the statute of limitations.

The undersigned notes that Plaintiffs named Defendant Seibert as a defendant in their *First Amended Complaint*.  Doc. No. 4 at 16–17.  Despite the vague pleading of allegations against Defendant Seibert, the undersigned is reluctant to dismiss the claims against her on statute of limitations grounds because the *First Amended Complaint* complies with the relevant statute of limitations.  Thus, the undersigned will consider the claims against Defendant Seibert in conjunction with the other official capacity claims asserted against the Dayton Defendants in sub-section VI.C.

In sum, the undersigned finds that all of Plaintiffs' claims against Defendants City of Dayton Fire Department, Wadzeck, and Green are barred by the statute of limitations, and accordingly, all such claims should be dismissed.

## B.  Non-Jural Entity

Though the statute of limitations bars Plaintiffs' claims against the City of Dayton Fire Department, Plaintiffs' claims should also be dismissed because the City of Dayton Fire Department is a non-jural entity that is incapable of being sued.  To sue a city department in Texas, the department "must enjoy a separate legal existence," which means that it must be "a separate and distinct corporate entity."  *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (internal citations omitted).  Thus, unless the "true political entity" has explicitly granted "the servient agency with jural authority," the servient agency may not sue nor be sued.  *Id.*  Plaintiffs fail to allege any facts demonstrating that the City of Dayton has granted the City of Dayton Fire

Department jural authority as a separate entity.  Accordingly, any claims Plaintiffs have against the City of Dayton Fire Department should be dismissed on this basis as well.  *See*, *e.g.*, *Hughes v. City of Schertz*, 2007 WL 3128511, at *1–2 (W.D. Tex. Sept. 28, 2007) (dismissing a city's fire department that was sued together with the city, which did not explicitly grant jural authority to the fire department).

### C.  Redundant Claims

The undersigned discerns vague and conclusory discrimination, equal protection, and due process claims asserted against Defendants Seibert, Melancon, Vine, Coleman, and Hughes, all of whom are sued in their official capacities.  Doc. No. 18 at ¶¶ 17, 21, 32, 39, 47.  "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)) (internal quotations omitted).  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Graham*, 473 U.S. at 166.  "It is *not* a suit against the official personally, for the real party in interest is the entity."  *Id.* (emphasis in original).

Because all these defendants are City of Dayton officials sued in their official capacities and the City of Dayton is a co-defendant, all claims against these defendants should be dismissed as redundant of Plaintiffs' claims against the City of Dayton.  *See*, *e.g.*, *Marceaux v. Lafayette City-Par. Consol. Gov't*, 614 F. App'x 705, 708 (5th Cir. 2015) (affirming dismissal of official capacity claims against municipal officers when the municipality was also a defendant); *Chavez v. Alvarado*, 550 F. Supp. 3d 439, 450 (S.D. Tex. 2021) (dismissing claims against individual police officers in their official capacities as redundant of plaintiffs' claims against the City of Houston).

Accordingly, Plaintiffs' claims against Defendants Seibert, Melancon, Vine, Coleman, and Hughes should be dismissed.

### D.  *Monell* Liability

Finally, the undersigned turns to Plaintiffs' *Monell* liability claims against Defendant City of Dayton.  Plaintiffs assert a variety of vague allegations against the City of Dayton in their *Second Corrected Amended Complaint*, including that the City of Dayton was untruthful to the Attorney General of Texas' office, denied proper hold of the wrecked car, failed to conduct a preliminary scene investigation, failed to procure medical records, failed to recognize the seriousness of the injuries resulting from the crash, failed to collect statements from witnesses after the accident, and intentionally suppressed a criminal investigation into Morgan White, among others.  Doc. No. 18 at 4, ¶¶ 4–12.  The City of Dayton moves to dismiss Plaintiffs' claims because Plaintiffs fail to state any allegations that an official city policy or custom was the moving force behind any alleged violation of Plaintiffs' constitutional rights.  Doc. No. 24 at 10.

42 U.S.C. § 1983 "makes liable '[e]very person' who, under color of state law, violates federal constitutional rights."  *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018).  To assert a *Monell* liability claim under 42 U.S.C. § 1983 against the City of Dayton, Plaintiffs must allege three elements: (1) a policymaker; (2) an official policy; and (3) a violation of a constitutional right whose "moving force" is the policy or custom.  *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

There are three ways to establish a "policy" under *Monell*:

First, a plaintiff can show written policy statements, ordinances, or regulations.[] Second, a plaintiff can show a widespread practice that is so common and well-settled as to constitute custom that fairly represents municipal policy.[] Third, even a single decision may constitute municipal policy . . . when the official or entity

22

possessing final policymaking authority for an action performs the specific act that forms the basis of the § 1983 claim.[]

*Webb v. Town of Saint Joseph*, 925 F.3d 209, 215 (5th Cir. 2019) (internal footnotes, citations, and quotation marks omitted).

Plaintiffs fail to allege any facts showing (1) the existence of written policy statements, ordinances, or regulations, (2) a widespread practice, or (3) a single decision by an official that possesses final policymaking authority sufficient to establish a "policy" for *Monell* liability purposes. Moreover, even if Plaintiffs' vague, conclusory allegations somehow established the existence of a policy, they have alleged no facts showing that such a policy was the moving force behind a violation of any of their constitutional rights. Accordingly, because Plaintiffs fail to plead facts establishing these essential elements of their *Monell* claims, their claims against the City of Dayton fail to state a claim for *Monell* liability and should be dismissed.

In sum, the undersigned recommends granting the Dayton Defendants' instant *Motion to Dismiss* (Doc. No. 24).

**VII.    Claims Against Non-Responding Defendants**

Additionally, Plaintiffs assert vague, conclusory allegations against the Ramji Law Group and Adam Ramji, Jamey Wayne Bice, Stephanie Lee Blum Bice, Morgan White, and Union Pacific Railroad Company in their *Corrected Second Amended Complaint*. Doc. No. 18. None of these defendants have answered or otherwise responded. However, where a defending party establishes that the plaintiff has no cause of action, the same defense generally inures to the benefit of a defaulting defendant. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001); *Young v. Isola, Mississippi, By & Through Miller*, 708 F. App'x 152, 155 (5th Cir. 2017); *McCarty v. Zapata County*, 243 F. App'x 792, 794 (5th Cir. 2007); *Lopez v. Cain*, No. 6:22-CV-00148-JDK, 2023 WL

7030184, at *8 (E.D. Tex. Sept. 19, 2023), *report and recommendation adopted*, No. 6:22-CV-148-JDK-JDL, 2023 WL 7027505 (E.D. Tex. Oct. 25, 2023).

Plaintiffs fail to plead sufficient facts to establish a cognizable cause of action against any of these defendants. Defendants Ramji Law Group and Adam Ramji are simply named in the caption of the complaint and Plaintiffs do not allege a single cause of action against them, nor even mention them anywhere else in the operative complaint. Doc. No. 18 at 1. Thus, Plaintiffs fail to allege any claim upon which relief can be granted, and accordingly, all of Plaintiffs' claims against these defendants should be dismissed. Regarding Defendant Morgan Skye White, while Plaintiffs discuss White extensively throughout the operative complaint, they fail to actually allege any cognizable causes of action against her. Accordingly, all of Plaintiffs' claims against Defendant White should be dismissed.

Regarding Defendants Jamey Wayne Bice and Stephanie Lee Blum Bice, Plaintiffs vaguely allege, in conclusory fashion, that these defendants obstructed justice and interfered with a criminal investigation. Doc. No. 18 at 28, ¶¶ 120–25. These allegations do not sufficiently state a cognizable claim upon which relief can be granted. Accordingly, all of Plaintiffs' claims against these defendants should be dismissed. Finally, Plaintiffs allege the same vague constitutional claims under § 1983 against Defendant Union Pacific Railroad as they did against the Dayton Defendants, namely that Union Pacific violated Madelyn Quiroz's due process and equal protection rights. Doc. No. 18 at 31. Plaintiffs have alleged no facts showing that Union Pacific was a state actor, and thus, Plaintiffs cannot establish any of their § 1983 claims against it. *See Yeager v. City of McGregor*, 980 F.2d 337, 338 (5th Cir. 1993) (noting that "[w]here there is no state action, no section 1983 constitutional claim exists"). Accordingly, all of Plaintiffs' claims against Union Pacific should be dismissed.

## VIII.    Remaining State Law Claims

The only Defendant not yet addressed in this Report is Defendant Eduardo Hernandez. Plaintiffs allege only a state law negligence claim against Defendant Hernandez.  Doc. No. 18 at 45, ¶¶ 219–31.  Because the undersigned recommends dismissal of all of Plaintiffs' federal claims, no federal question remains before the court.  However, the court is not divested of jurisdiction based on this alone—the court must exercise its discretion whether to exercise supplemental jurisdiction over Taylor's state law claims under the Texas Constitution.  *See* 28 U.S.C. § 1367(c)(3) (stating that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction").  When a court dismisses all federal claims prior to trial, the general rule is to dismiss any pendent state law claims.  *Watson v. City of Allen, Texas*, 821 F.3d 634, 642 (5th Cir. 2016).  However, the dismissal of pendent claims should be without prejudice so that Plaintiffs may refile their claims against Defendant Hernandez in the appropriate state court.  *Univ. of Texas Sys. v. Alliantgroup LP*, 400 F. Supp. 3d 610, 619 (S.D. Tex. 2019) (citing *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999)).  Accordingly, all of Plaintiffs' claims against Defendant Hernandez should be dismissed without prejudice.

## IX.    Conclusion

The undersigned concludes that Plaintiffs fail to allege sufficient facts to establish any viable cause of action against Defendants Jennifer Bergman Harkness, Matthew Poston, and Matthew Saldana.  Accordingly, these defendants' *Motion to Dismiss Plaintiffs' Second Corrected Amended Complaint* (Doc. No. 20) should be **GRANTED.**

The undersigned further concludes that Plaintiffs fail to allege sufficient facts to establish any viable cause of action against Defendants Allegiance Mobile Health and Steve Smith.

Accordingly, these defendants' *Motion to Dismiss Plaintiffs' Second Corrected Amended Complaint* (Doc. No. 21) should be **GRANTED.**

The undersigned further concludes that Plaintiffs fail to allege sufficient facts to establish any viable cause of action against Defendants the City of Liberty, Texas and its official Katelyn Grimes. Accordingly, these defendants' *Motion to Dismiss Plaintiffs' Second Corrected Amended Complaint* (Doc. No. 23) should be **GRANTED.**

The undersigned further concludes that Plaintiffs fail to allege sufficient facts to establish any viable cause of action against Defendants City of Dayton, The City of Dayton Fire Department, Caroline Wadzeck, Theo Melancon, Robert Vine, John D. Coleman, Terri Hughes, Kristen Seibert, and Murphy Green. Accordingly, these defendants' *Motion to Dismiss Plaintiffs' Second Corrected Amended Complaint* (Doc. No. 24) should be **GRANTED.**

The undersigned further concludes that Plaintiffs fail to allege sufficient facts to establish any viable cause of action against Defendants Ramji Law Group and Adam Ramji, Morgan Skye White, Jamey Wayne Bice, Stephanie Lee Blum Bice, and Union Pacific Railroad Company. Accordingly, any claims against these defendants should be **DISMISSED.**

Finally, the undersigned recommends that Plaintiffs' state law claims against Defendant Eduardo Hernandez should be **DISMISSED WITHOUT PREJUDICE.**

## X.   Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to this action has the right to file objections to this Report and Recommendation. Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within 14 days after being served with a copy of this Report, and (4) be no more than eight (8) pages in length. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2); E.D. TEX.

CIV. R. CV-72(c). A party who objects to this Report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this Report, within 14 days of being served with a copy of this Report, bars that party from: (1) entitlement to *de novo* review by the United States District Judge of the findings of fact and conclusions of law, and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge. *See Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 30th day of July, 2024.

_____
Zack Hawthorn
United States Magistrate Judge